UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                              :

HELICON PARTNER, LLC,                            :

                 Plaintiff                  :

                                              :

- against-                                :

                                              :       Adversary Proceeding No.
                                              :           12-01602-SMB

KIM'S PROVISION CO., INC.; WON HO KIM;   :
KI KIM; JANE AND JOHN DOES 1-10       :

                                              :

                 Defendants              :

                                              :
-----------------------------------------------------------------------X

## DECLARATION OF T. STEVEN HAR IN SUPPORT OF NGF'S
## MOTION TO VACATE OR MODIFY AN ORDER OF ATTACHMENT

       Pursuant to 28 U.S.C. § 1746, T. Steven Har declares that the following facts are true

and correct, subject to the laws against perjury of the United States of America:

       1.      I am a member of the law firm Duane Morris LLP, attorneys for non-party NGF,

Inc. d/b/a NGF Warner Co. ("NGF").  I submit this declaration on behalf of NGF in support of

its Emergency Motion to Vacate or Modify an Order of Attachment.

       2.      The sole purpose of this declaration is to put before the Court materials referred to

in the accompanying memorandum of law.

       3.      Annexed hereto as Exhibit 1 is a copy of Plaintiff's Ex Parte Application for

Order of Attachment, dated April 26, 2012.

       4.      Annexed hereto as Exhibit 2 is a copy of the Complaint in this Action, dated April

26, 2012.

5. Annexed hereto as Exhibit 3 is a copy of the Order of Attachment issued by the Supreme Court of New York, New York County, on April 27, 2012 in this Action.

6. Annexed hereto as Exhibit 4 is a copy of the letter I submitted to this Court on May 7, 2012, Letter from T. Steven Har to The Honorable Stuart M. Bernstein dated May 7, 2012, and exhibit thereto.

7. Annexed hereto as Exhibit 5 is a copy of the letter I submitted to this Court on May 9, 2012, Letter from T. Steven Har to The Honorable Stuart M. Bernstein dated May 9, 2012, and exhibit thereto.

8. Annexed hereto as Exhibit 6 is a copy of the letter I submitted to this Court on May 10, 2012, Letter from T. Steven Har to the Honorable Stuart M. Berstein dated May 10, 2012, and exhibits thereto.

Dated: New York, New York
      May 15, 2012

                                 T. Steven Har

# EXHIBIT 1

DM1\2843921.1

SUPREME COURT FOR THE STATE OF NEW YORK
COUNTY OF NEW YORK

HELICON PARTNERS, LLC,

                              Plaintiff,

        v.

KIM'S PROVISION CO., INC.; WON
HO KIM; KI KIM; JANE AND JOHN
DOES 1-10,

                              Defendants.

INDEX NO.:  650499/2012

**EX PARTE APPLICATION FOR ORDER OF ATTACHMENT**

Plaintiff, Helicon Parnters, LLC, pursuant to CPLR 6210, et seq., hereby applies for an order of attachment without notice.

Plaintiff relies on the Verified First Amended Complaint, the Affirmations of Sean Mack, Esq. and Edward Farbenblum submitted herewith.

Plaintiff respectfully submits that for the reasons detailed in the Affirmation of Edward Farbenblum notice of this application cannot be given, without significant risk that the Defendants will again secrete, transfer and divest their assets, which were pledged as a collateral under a security agreement.

A proposed form of order also is enclosed.  Specifically, plaintiff respectfully requests that the Court enter an order directing that:

(i)     that the Sheriff of the City of New York, or the
        Sheriff of any County of the State of New York, levy

within his jurisdictions on any and all assets of Won Ho Kim, Ki Kim or Kim's Provisions Company, Inc. (d/b/a U.S. Meat), including but not limited to all bank accounts and other tangible property, for the purpose of securing and satisfying any judgment recovered by the plaintiff herein, together with interest, costs, disbursements and reasonable Sheriff's fees, and the Sheriff shall proceed in the manner and make his return within the time prescribed by law; and it is further

(ii)     that Kim and Kim's Provision are immediately ordered to permit Plaintiff access to its premises for purposes of Plaintiff temporarily removing any computers of Kim or Kim's Provision located at Hunts Point in buildings G-2, B or D-2 so that forensic images of the hard drives can be made and thereafter the computers be returned to defendants, and to the extent any such computers are on the premises of third parties, including Fancy Foods, Inc., such third parties shall permit Plaintiff access to the computers;

(iii)    that Defendants are hereby compelled to maintain and preserve all information on the foregoing computers, as well as any other record relating to

the assets, inventory and other Property pledged as collateral;

(iv)     that the customers of Kim's Provision (d/b/a U.S. Meat) are hereby directed to pay any monies owed to Kim's Provision directly to Plaintiff; Plaintiff shall be responsible for maintaining an accounting of all such payments received and to periodically provide a copy of such accounting to counsel for defendants;

(v)      and such other and further relief as the Court deems appropriate.

Dated April 26, 2012

_____
Pashman Stein, PC
Sean Mack, Esq.
1375 Broadway, 10th Floor
New York, New York 10018
Attorneys for Plaintiff
**Helicon Partners, LLC**

SUPREME COURT FOR THE STATE OF NEW YORK
COUNTY OF NEW YORK

HELICON PARTNERS, LLC,

                    Plaintiff,

     v.

KIM'S PROVISION CO., INC.; WON
HO KIM; KI KIM; JANE AND JOHN
DOES 1-10,

                    Defendants.

INDEX NO.:  650499/2012

**AFFIRMATION IN SUPPORT OF
PLAINTIFF'S MOTION PURSUANT TO
C.P.L.R. § 6210, ET SEQ., FOR
THE ISSUANCE OF AN ORDER OF
ATTACHMENT EX PARTE**

      **SEAN MACK, ESQ.,** an attorney duly admitted and licensed to practice law in the courts of the State of New York, hereby affirms, pursuant to CPLR § 2106, and states under penalty of perjury, as follows:

      1.    I am a partner with the law firm of Pashman Stein, P.C., counsel for Plaintiff, Helicon Partners, LLC.  As such, I am fully familiar with the facts of this case.

      2.    I make this affidavit in support of plaintiff's application pursuant to C.P.L.R. § 6211-6212 for an immediate order of attachment without notice.

      3.    Plaintiff's application is supported by its Verified Amended Complaint and the Affirmation of Edward Farbenblum, submitted simultaneously herewith that sets forth that defendants have engaged in a scheme to liquidate, wrongfully transfer and otherwise deprive plaintiff of its security

interest in the assets of defendant Kim's Provisions previously pledged to secure an $8 million loan that is in default.

4.  As demonstrated in the Verified Amended Complaint and pursuant to C.P.L.R. § 6212(a), Plaintiff has demonstrated that the loan is indeed in default; that Kim's Provisions unconditionally guaranteed repayment of the loan; that Kim's Provisions executed a Security Agreement granting Plaintiff a security interest in its assets; that the loan is in default; that Kim's Provisions has been on notice of the default since at least, late January 2012; and that Kim's Provisions has thus far refused to cooperate with Plaintiff in violation of its contractual obligations under the parties' Security Agreement.

5.  Consequently, as required by C.P.L.R. §6212(a), Plaintiff has overwhelmingly demonstrated that there is indeed a cause of action and that it is probable that it will succeed on the merits.

6.  Moreover, as further set forth in the Verified Amended Complaint and the Affirmation of Edward Farbenblum, it is beyond dispute that Kim's Provisions and its principals, with knowledge of the default and despite Plaintiff's demands for information under the Security Agreement, have assigned, disposed of, encumbered or secreted property subject to Plaintiff's security interest with the intent to defraud Plaintiff or frustrate the enforcement of a judgment that might be rendered in plaintiff's

favor. See C.P.L.R. § 6201(4). Consequently, Plaintiff, pursuant to C.P.L.R. § 6212(a), grounds exist for attachment.

7. In addition, Plaintiff is unaware of any counterclaims and therefore, pursuant to C.P.L.R. § 6212(a), the amount demanded from defendant exceeds all counterclaims known to the plaintiff.

8. Pursuant to C.P.L.R. § 6212(b), Plaintiff agrees to give an undertaking in an amount fixed by the court, but not less than $500.00, in the form of an approved bond, with the agreement that such undertaking is pledged to pay to the defendant all costs and damages, including reasonable attorney's fees, which may be sustained by reason of the attachment if the defendant recovers judgment or if it is finally decided that the plaintiff was not entitled to an attachment of the defendants' property.

9. Plaintiff has provided herewith a form of Order consistent with requirements of C.P.L.R. § 6211(a) and (b).

10. Plaintiff respectfully requests that the Court enter the proposed form of Order to inhibit defendants from furthering fraudulently transferring assets and otherwise diverting the assets of Kim's Provision.

11. Specifically, Plaintiff requests that the Court order that: (i) the assets and bank accounts identified in the Farbenblum Affirmation, as well as any additional accounts and

3

assets discovered, be attached and levied by the Sheriff;
(ii) Kim and Kim's Provision be immediately ordered to make available to the undersigned counsel the computers of Kim's Provision located at Hunts Point in buildings G-2, B or D-2 so that forensic images of the hard drives can be made and thereafter the computers be returned to defendants, as well as to make copies of hard copy books and financial records;
(iii) Defendants be compelled to maintain and not destroy the existing information on those computers and any additional information generated on those computers, in particular relating to additional sales and payments; (iv) Kim's Provision's customers be directed to make payment of any monies owed to Kim's Provision (d/b/a U.S. Meat) directly to Plaintiff;
(v) Fancy Foods, Inc. be directed to pay all commissions owed to Kim to the Plaintiff; and (vi) the Sheriff levy on such other property of Kim's Provision, the Kims and their owned entities as plaintiff may identify.

12. Attached hereto as exhibit A is a copy of a New York Department of State records reflecting that Won Ho Kim is the chairman or chief executive officer of Warner International, Inc., which is listed as operating out of the same location as Kim's Provision.

13. I ran a search through the Federal Motor Carrier Safety Administration database and determined that US DOT #

4

1429396 on the side of the truck outside of Fancy Foods, is registered to Kim's Provision Co., Inc.

14. No previous application has been made for the relief requested.

WHEREFORE, it is respectfully requested that this motion for an order of attachment without notice be granted, together with such other relief as the court deems proper and the costs of this motion.

Dated: April 26, 2012

By:_____
SEAN MACK, ESQ.

PASHMAN STEIN, P.C.
1375 Broadway, 10th Floor
New York, New York 10018
Attorneys for Plaintiff
**Helicon Partners, LLC**

**EXHIBIT A**

# NYS Department of State

## Division of Corporations

### Entity Information

The information contained in this database is current through April 24, 2012.

Selected Entity Name: WARNER INTERNATIONAL, INC.
Selected Entity Status Information

|  |  |
|---|---|
| **Current Entity Name:** | WARNER INTERNATIONAL, INC. |
| **Initial DOS Filing Date:** | NOVEMBER 22, 2006 |
| **County:** | BRONX |
| **Jurisdiction:** | NEW YORK |
| **Entity Type:** | DOMESTIC BUSINESS CORPORATION |
| **Current Entity Status:** | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**

C/O WON HO KIM
HUNTS POINT COOP MARKET
BUILDING G-2
BRONX, NEW YORK, 10474

**Chairman or Chief Executive Officer**

WON HO KIM
HUNT POINT COOP MARKET G-2
BRONX, NEW YORK, 10474

**Principal Executive Office**

WARNER INTERNATIONAL, INC.
355 FOOD CENTER DRIVE
G-2
BRONX, NEW YORK, 10474

**Registered Agent**

NONE

This office does not record information regarding the
names and addresses of officers, shareholders or
directors of nonprofessional corporations except the
chief executive officer, if provided, which would be

listed above. Professional corporations must include
the name(s) and address(es) of the initial officers,
directors, and shareholders in the initial certificate of
incorporation, however this information is not
recorded and only available by viewing the certificate.

### *Stock Information

| # of Shares | Type of Stock | $ Value per Share |
|---|---|---|
| 200 | No Par Value | |

*Stock information is applicable to domestic business corporations.

### Name History

| Filing Date | Name Type | Entity Name |
|---|---|---|
| NOV 22, 2006 | Actual | WARNER INTERNATIONAL, INC. |

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New York
State. The entity must use the fictitious name when conducting its activities or business in New York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results   New Search

Services/Programs  |  Privacy Policy  |  Accessibility Policy  |  Disclaimer  |  Return to DOS
Homepage  |  Contact Us

SUPREME COURT FOR THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

HELICON PARTNERS, LLC,

                         Plaintiff,

          v.

KIM'S PROVISION CO., INC.; WON
HO KIM; KI KIM; JANE AND JOHN
DOES 1-10,

                         Defendants.

---

INDEX NO.:   650499/2012

**AFFIRMATION IN SUPPORT OF
PLAINTIFF'S MOTION PURSUANT TO
C.P.L.R. § 6210, ET SEQ., FOR
THE ISSUANCE OF AN ORDER OF
ATTACHMENT EX PARTE**

STATE OF NEW YORK     }
                      }ss.:
COUNTY OF NEW YORK    }

EDWARD FARBENBLUM, being duly sworn, deposes and says:

1.   I am one of the members of plaintiff Helicon Partners, LLC.  I have personal knowledge of the following facts.

2.   I make this affidavit in support of plaintiff's application pursuant to C.P.L.R. § 6211-6212 for an immediate order of attachment without notice.

3.   On January 27, 2012 Plaintiff notified Kim's Provision that a default had occurred under the Note.[1]  In that notice, Plaintiff demanded that, in accordance with the Security Agreement, Kim's Provision provide the location of the Property, including information on its accounts receivable, bank account

---

[1] Capitalized terms not defined herein have the meaning set forth in the Verified Amended Complaint file on April 26, 2012.

information, list of current inventory and all other physical assets.

4. Pursuant to its rights under the Security Agreement, Plaintiff further notified Kim's Provision that it could only continue to dispose of its inventory in the ordinary course of business if it provided the demanded information concerning the Property.

5. Kim's Provision never provided the demanded information, despite is obligation to do so under the Security Agreement.

6. On February 23, 2012, in exercise of its rights under the Uniform Commercial Code, Plaintiff seized one of Kim's Provision's delivery trucks, which was among the secured Property. Thereafter, and continuing through early April 2012, representatives of the Kims and Kim's Provision demanded the return of the delivery truck on the basis that it was needed for the conduct of Kim's Provision's business.

7. On March 16, 2012, Plaintiff filed an order to show cause pursuant to CPLR 7112 in this matter, seeking an order compelling Kim's Provision to appear for a deposition and to produce documents so that the Property could be specifically identified. On March 21, 2012, the Court declined to enter the requested order to show cause.

8. At various time between January 2012 and early April 2012, representatives of Kim's Provision and the Kims met with and engaged in discussions with representatives of Plaintiff, including me, concerning the possible settlement and/or resolution of the various claims against the Kims and Kim's Provision and the debts owed to Plaintiff.

9. As late as March 31, 2012, the Kims represented to Plaintiff that they were drawing an annual salary from Kim's Provision in the approximate amount of $250,000. As late as March 31, 2012, the Kims represented to Plaintiff that their 100% ownership interest in Kim's Provision had an estimated market value of approximately $3 million.

10. During that time, we negotiated in good faith to try to reach a settlement. By late March, the parties had agreed upon terms of a settlement, and I requested that our counsel draft the settlement papers. After the papers were drafted we were informed that Plaintiff would be unable to make the agreed upon settlement payments and that the settlement was off.

11. Unbeknownst to us, while we were negotiating in good faith, defendants were surreptitiously transferring away all of the collateral pledged to Plaintiff by Kim's Provision and transferring its operations to another entity.

12. After Defendants ended the settlement discussions, on April 11, 2012, Plaintiff demanded that Kim's Provision permit

3

Plaintiff access to its warehouse on April 19, 2012 so that Plaintiff could identify and assess the Property, and to inspect and copy Kim's Provision's books and financial records. Based on a prior visit I made a few months ago, Plaintiff knew that Kim's Provision operated out of spaces at Hunts Point, Building G-2 and Building D.

13. By letter dated 5:05 p.m. on April 18, 2012, counsel for Kim's Provision rejected the inspection demand.

14. Despite its counsel's rejection of Plaintiff's inspection demand, Plaintiff visited Kim's Provision as notified on April 19, 2012. Once there, we discovered that Building D-2, the space that Kim's Provision had only months before operated out of, was vacant. We also discovered that in building G-2, the other space previously occupied by Kim's Provision, all that remained were file cabinets and computers. The Kim's Provision delivery trucks that I had seen outside of Building D-2 on the previous visit, also were not at that location.

15. We discovered the Kim's Provision's delivery trucks outside of another warehouse in Hunts Point, in Building B. Attached hereto as Exhibit A are photographs I took of the Kim's Provision delivery truck outside of Building B. One of the pictures shows that the U.S. Meat logo has been painted over or removed.

16. Upon inquiry of an employee at that warehouse, we were initially told that Mr. Kim was the boss of that warehouse, and could see numerous boxes of inventory labeled under the name "U.S Meat," which is the name under which Kim's Provision had been doing business. The visible equipment in that warehouse also had "U.S. Meat" written on it. The single computer in use at that location, which was in plain sight, reflected account and inventory information for U.S. Meat. Upon inquiry, it was confirmed that the computer belongs to Kim's Provision.

17. The employee then stated that he was calling Mr. Kim by telephone. After having a short conversation by telephone in Korean, the employee advised that the warehouse was that of Fancy Foods, Inc., not Kim.

18. Based on my personal observations, it appeared that Kim's Provision had moved all of its business assets and operations and was now operating through Fancy Foods, which occupies several of the adjacent warehouse spaces in Building B.

19. Yesterday, I spoke with a principal of Fancy Foods who confirmed my observations. I was informed that Kim's Provision transferred its inventory to Fancy Foods in early March, 2012, along with its trucks, furniture and warehouse equipment. Fancy Foods asserted only that it paid for the inventory. Mr. Kim also has entered into a sales agreement, whereby Kim is paid a commission for sales he makes to Kim's Provision's customers

under the name Fancy Foods.   Other than the commission paid to Kim, Fancy Foods retains the revenue from those sales, including the revenue from the sales of the inventory that had been at Kim's Provision's warehouse in Building D-2.

20.   The Kims and Kim's Provision further agreed to permit Fancy Foods to use Kim's Provision's USDA meat license to fabricate and package additional inventory.  That additional inventory is and was packaged in boxes under the name U.S. Meat, which is the d/b/a for Kim's Provision.  Kim then sells that additional inventory to Kim's Provision's customers, only on behalf of Fancy Foods.

21.   But for the Kim's wrongful diversion of Kim's Provision's assets and inventory, all of the sales made by the Kims through Fancy Foods, would have generated sales and revenues for Kim's Provision, the proceeds of which would have, and should have, been available to pay Kim's Provision's creditors, including plaintiff.

22.   Based on information Plaintiff has been able to obtain without the cooperation of Kim's Provision, it appears that Kim's Provision has outstanding accounts receivable in excess of $ 4 million.  Attached hereto as Exhibit B is a list of customers believed to have outstanding payables owed to Kim's Provision.

23.  Plaintiff also has identified the following bank accounts as accounts currently being used by Kim and/or Kim's Provision to deposit payments received from Kim's Provision's customers and/or to deposit the commission payments made by Fancy Foods for the sales to Kim's Provision's customers: Woori America Bank, Signature Bank, and Wilshire State Bank.

24.  Based on my observations, it appears that Kim and Kim's Provision are utilizing bank accounts in the name of affiliated companies, Warner International, NGF Warner Meat Co., Inc., and Warner Meat.


[remainder of this page intentionally left blank]

7

By: _____
**Edward Farbenblum**

Sworn to before me this
26th day of April, 2012

_Mildred Criscuolo_
Notary Public

MILDRED CRISCUOLO
NOTARY PUBLIC-STATE OF NEW YORK
No. 01CR6234860
Qualified in Bronx County
My Commission Expires January 31, 2018

**EXHIBIT A**



Kim's Provision Co Inc.
D-2 Hunts Point Co-op MKT
Bronx, N.Y. 10474
GVW.17.995





**USDOT #1429396**

MORGAN **GVW 33,000**



EXHIBIT B

| CUSTOMERS | ADDRESSES |
|---|---|
| 1.    Hoskie Company, Inc. | 132 Harrison Place  Brooklyn, NY 11237 |
| 10.    Boka | 9 St Marks Pl (between 3rd Ave & Astor Pl) New York, NY 10003 |
| 100.    UFC (Unidentified Flying Chickens) | 71-22 Roosevelt Ave, Jackson Heights, NY 11372 |
| 101.    Woo Chon Restaurant | 4119 Kissena Boulevard Flushing, NY 11355 |
| 102.    Wow Fresh Meat | 14215 Centreville Sq, Centreville, VA 20121 |
| 103.    Young Joo Corp. | |
| 104.    Yuraku Restaurant | 19220 Northern Boulevard  Flushing, NY 11358 |
| 105.    Noodle 32 | 11 West 32nd Street  New York, NY 10011 |
| 106.    Chicken & Burger | |
| 107.    You Chun Restaurant | 135 Broad Avenue  Palisades Park, NJ 07650 |
| 108.    NGF | |
| 109.    JJIN JJA Roo Food Court 6 | 11 West 32nd Street  New York, NY 10011 |
| 11.    Bon Chon (5th Ave) (Bon Chon Chicken) | 325 5th Avenue, New York, NY 10025 |
| 110.    Mr. Shin | |
| 111.    Angus America | 10 West 32nd Street New York, NY 10001 |
| 112.    Miss Korea | 152 Spring St, New York, NY 10012 |
| 12.    Boom Boom (Boom Restaurant) | 152-22 Northern Blvd, Flushing, NY 11354 |
| 13.    Buk Chang Dong Restaurant | |
| 14.    Cana Marine Supply Inc. | 40 Smith Street, Waldwick, NJ 07463-1613 |
| 15.    Cheoga Jip Chicken | 160-24A Northern Blvd., Queens, NY 11358 |
| 16.    Cho Bak Sa Noodle | 55 W 35th St, New York, NY 10001 |
| 17.    Cho Dang Goal Restaurant | 118 Broad Ave, Ste N6-12, Palisades Park, NJ 07650 |
| 18.    Chung Dam Dong | 4006 74th St, Elmhurst, NY 11373 |
| 19.    Chung Kiwa Restaurant | 40-11 149th Pl Flushing, NY 11354 |
| 2.    Fusion Po Cha | 560 Old Post Road  Edison, NJ 08817 |
| 20.    Chung Sol Bat (Chung Sol Garden Restaurant) | 150 Sylvan Av Englewood Cliffs NJ 07632 |
| 21.    CK BBQ (CK BBQ LLC) | 132-18 32Nd Avenue, Flushing, NY 11354 |
| 22.    Coco Garden (Coco Garden Corp) | |
| 23.    Dae Dong Maner (Dae Dong Manor) | 150-24 Northern Boulevard  Flushing, NY 11354 |
| 24.    Dae Myung Kwon (Dae Myung Kwan Restaurant) | 270 Broad Avenue, Palisades Park, NJ 07650 |
| 25.    Dawa Do Buffet Restaurant | |
| 26.    Ddok Ddak (Baden) | 28 W 32nd St, New York, NY 10001 |
| 27.    Dok Ka Bi Restaurant | 374 Broad Ave, Leonia, NJ 07605 |
| 28.    Don Eui Bo Gahm (or Don's Bogam BBQ and Wine Bar) | 17 East 32nd Street  New York, NY 10016 |
| 29.    Dong Bang Grill Restaurant | 1616 Palisade Avenue  Fort Lee, NJ 07024 |
| 3.    Austin Meat company | 2856 Bruckner Boulevard, Bronx, NY 10465-1951 |
| 30.    East Noodle | 119 2nd Avenue (East 7th Street), New York, NY 10003 |
| 31.    Eun Ha Soo (Eun Ha Soo Catering) | 305 Broad Ave, Palisades Park, NJ 07650 |
| 32.    Food Court (Tappan Food) | |
| 33.    Gahwa #1 Korean Restaurant (Gahwa Restaurant) | 29-32 Union Street  New York, NY 11354 |
| 34.    Gahwa #2 (Gahwa Restaurant) | 18908 Northern Blvd, Flushing, NY 11358 |
| 35.    Gam Mee OK Inc.(M) | 196-50 Northern Blvd, Flushing, NY 11358 |
| 36.    Gam Mee OK Inc (NJ) | 485 Main Street  Fort Lee, NJ 07024 |
| 37.    Global DH Group | |
| 38.    Goshen Kimchi (Jun Joo) | |
| 39.    Green Nature | |
| 4.    BCD (NJ) or  (BCD To Fu House) | 1640 Schlosser St, Unit C, Fort Lee, NJ 07024 |
| 40.    Gu Gong Tan | 4003 149th Pl, Flushing, NY 11354 |
| 41.    Hae Woon Dae Restaurant | 7532 Broadway, Elmhurst, NY 11373 |
| 42.    Han Bat Restaurant | 53 W 35th St Ste 4, New York, NY 10001 |
| 43.    Han Oak | 141 43 Northern Blvd, Flushing, NY 11351 |
| 44.    Han Yang Bun Kik | |
| 45.    Han Nam Chain Corp. | 14140 Northern Blvd, Flushing,  NY  11354-4239 |
| 46.    Har Grand Bk Corp. | 4428 55TH AVE  MASPETH  NY  11378-1042 |
| 47.    Har Manhattan | |
| 48.    Har Northern Inc. | 15640 Northern Boulevard  Flushing, NY 11354 |

| | | |
|---|---|---|
| 49. | Har Ridgefield | 320 Broad Ave., Ridgefield, NJ 07657 |
| 5. | B & C 21 Corp. | 321 BROAD AVE, Ridgefield, NJ 07657 |
| 50. | Har Woodside Han hee | |
| 51. | Han Boo Suk | |
| 52. | HY Hicksville (HY LI) | 478 Plainview Rd, Hicksville, NY 11801 |
| 53. | HY NJ | 433 S Washington Ave, Bergenfield, NJ 07621 |
| 54. | HY Seoul Shopping Inc. | |
| 55. | Hyo Dong Gak Restaurant | 51 W 35th St # A  New York, NY 10001 |
| 56. | JE Market | |
| 57. | Kang SH (Yonkers) (Kang Suh Resurant) | 2375 Central Park Ave, Yonkers, NY 10710 |
| 58. | Kan Suh Hoikwan (Kan Suh Hoi kwan Restaurant) | 1250 Broadway 32 St. New York, NY 10006 |
| 59. | Keo Ku Jang Inc. | 245 US Highway 46  Parsippany-Troy Hills, NJ 07054 |
| 6. | Bang's Kitchen Fort Lee (New Bang Kitchen) | 1355 16th Street  Fort Lee, NJ 07024 |
| 60. | Keumsan | |
| 61. | Kobawoo Market | |
| 62. | Korea Palace (Manhattan) | 127 East 54th Street  New York, NY 10022 |
| 63. | Kum Gang san | 49 West 32nd Street, New York, NY 10001 |
| 64. | Laon, Inc. | 6158 Springfield Blvd, Bayside, NY 11364 |
| 65. | M 2 M | 55 3rd Ave, New York, NY 10003 |
| 66. | Ma Po Restaurant | |
| 67. | Madangsui (M) | 35 West 35th St New York, NY 10001 |
| 68. | Mandoo Bar Restaurant | 2 West 32nd Street  New York, NY 10001 |
| 69. | Manna Kitchen Restaurant | 28 E 18th St # 4  New York, NY 10003 |
| 7. | Bang's Kitchen Northern | *Bang's Kitchen, 165-19 Northern Blvd., Flushing, NY 11358* |
| 70. | Moim | 206 Garfield Place  Brooklyn, NY 11215 |
| 71. | Moku | 10 W 32nd St # 2, New York, NY 10001 |
| 72. | Momokawa | 157 East 28th Street  New York, NY 10016 |
| 73. | Mr. Nam | |
| 74. | Myung Dong Noodle Inc. | 158-03 NORTHERN BOULEVARD, NY 11358 |
| 75. | Myung Poom Kalbi | 41-22 162nd Street  flushing, NY 11358 |
| 76. | New Mart | |
| 77. | New Wonjo (32 HY Corp) | 23 West 32nd Street, New York, N.Y. 10001 USA |
| 78. | New York Kom Tang | 32 West 32nd Street  New York, NY 10001 |
| 79. | Noodle & Noodle | 2024 Center Ave, Fort Lee, NJ 07024 |
| 8. | Bann | *350 West 50th Street  New York, NY 10019* |
| 80. | Oriental House | 161 N Broadway, South Amboy NJ 08879 |
| 81. | Pastel (Food Court #2)  (Pastel Food Corp) | 11 W 32nd St, Manhattan, NY 10001 |
| 82. | Pho Hana | 20 East Columbia Avenue  Palisades Park, NJ 07650 |
| 83. | Picnic Garden | 14742 Northern Boulevard  Flushing, NY 11354 |
| 84. | Pocha 32 | 15 W 32nd St #2  New York, NY 10001 |
| 85. | Poong Lim | 2053 Lemoine Avenue  Fort Lee, NJ 07024 |
| 86. | Poong Nyun Go KI | 276 Broad Ave, Palisades Park, NJ 07650 |
| 87. | Rodeo Garden | 225 Broad Ave, Palisades Park, NJ 07650 |
| 88. | Samhwa Meat & Grocery | |
| 89. | San Deul Restaurant | 251-05 Northern Blvd., Little Neck, NY 11363 |
| 9. | BitGoul Restaurant (BitGoul Tofu & BBQ Restaurant) | 136-72 Roosevelt Ave, Flushing, NY 11354 |
| 90. | Seoul Garden Restaurant | 34 W 32nd St, New York, NY 10001 |
| 91. | So Kong Dong Restaurant | 130 Main Street  Fort Lee, NJ 07024 |
| 92. | So Kong Dong | 130 Main Street  Fort Lee, NJ 07024 |
| 93. | Spring Restaurant | 97 Homans Avenue, Closter, NJ 07624 |
| 94. | Su Ra Cheong | 14909 41st Ave, Flushing, NY 11355 |
| 95. | Sunny Buk Chang Natural | |
| 96. | Sushi Park | 121 2nd Avenue  New York, NY 10003 |
| 97. | Takashi | 456 Hudson Street  New York, NY 10014 |
| 98. | Tang | 7 E 27th St, New York, NY 10016 |
| 99. | U So Bo So Restaurant | 154-01 Northern Blvd, Flushing, NY 11354 |

# EXHIBIT 2

SUPREME COURT FOR THE STATE OF NEW YORK
COUNTY OF NEW YORK

HELICON PARTNERS, LLC,

                              Plaintiff,

        v.

KIM'S PROVISION CO., INC.; WON
HO KIM; KI KIM; JANE AND JOHN
DOES 1-10

                              Defendants.

INDEX NO.:  650499/2012

VERIFIED FIRST AMENDED
COMPLAINT

The Plaintiff, Helicon Partners, LLC, by way of amended complaint against the Defendant Kim's Provision Co., Inc., Won Ho Kim, Ki Kim and Jane and John Does 1-10, alleges as follows:

## PARTIES/ BACKGROUND

1.    Plaintiff, Helicon Partners, LLC is a limited liability company, having an office at 547 West 27th Street, New York, New York.

2.    Defendant, Kim's Provision Co., Inc. ("Kim's Provision") is a company incorporated and existing under the laws of the State of New York and has an office at Hunts Point Coop Mkt. Bldg. G-2, Bronx, New York.  Kim's Provision does, or has done, business under the name "U.S. Meat Co." or "U.S. Meat."

3.    Won Ho Kim is a principal of Kim's Provision, and is believed to reside in New Jersey.

1

4.  Ki Kim is a principal of Kim's Provision, the spouse of Won Ho Kim, and is believed to reside in New Jersey.  Won Ho Kim and Ki Kim (together, the "Kims") own 100% of Kim's Provision.

5.  John and Jane Does are persons or entities, whose identities are not currently known to plaintiff, who have conspired with, participated in, and/or facilitated the wrongful and fraudulent conduct described herein.  Such persons may include lawyers, accountants, and other persons who were aware of the defaults of Kim's Provision and the Kims, and of the fraudulent transfer of assets and the Property by the Kims and Kim's Provision, and induced plaintiff to continue negotiating in good faith to attempt to resolve the parties' dispute, while Defendants conspired to defraud, and did defraud Plaintiff. John and Jane Doe defendants also include those entities or persons that have received the fraudulent transfers.

### Default Under An $8 Million Loan

6.  On or about May 27, 2008, 15 Engle Street, LLC ("15 Engle Street" or the "Borrower") took out a loan from Woori America Bank ("Woori") in the principal amount of $8,000,000 (the "Loan").  The Loan is evidenced by a Commercial Loan Agreement entered into a between Woori and the Borrower.

7.  On May 27, 2008, Woori and 15 Engle Street entered into a Promissory Note in the original principal amount of

2

$8,000,000 (the "Note"). Pursuant to the terms of the Note, the original principal amount of $8,000,000 was to be paid in 60 installments. The Borrower was to make fifty-nine payments of in the amount of $60,829.13 payable on the first day of each month beginning July, 2008, with a single balloon payment of the unpaid balance and interest on June 1, 2013.

8.   Repayment of the Note was unconditionally guaranteed by Kim's Provision.

9.   Repayment of the entire outstanding principal balance of the Note, together with all interest thereon and all other sums due under the Note also is secured by a Security Agreement executed by Kim's Provision in favor of Woori on May 27, 2008. A copy of the Security Agreement is attached hereto as Exhibit "A."

10.   On or about December 29, 2011, Woori transferred to Plaintiff all of its rights, titles and interest in and to the Note and Security Agreement. As such, plaintiff is the successor in interest to Woori under the Note and the Security Agreement. Attached hereto as Exhibit "B" is a true copy of the allonge and note, and the assignment of loan documents including the Security Agreement to Plaintiff.

11.   Under the Security Agreement, Kim's Provision granted plaintiff a security interest in all of the property described in the Security Agreement that Kim's Provision owns now or in

3

the future, wherever located and all proceeds and products from that property (the "Property"). The Property includes all of Kim's Provision's inventory, accounts and other payment rights, general intangibles, equipment, and vehicles.

12. Paragraph five of the Note executed by 15 Engle Street identifies events of default, which include "fail[ure] to perform any condition or keep any promise or covenant of this Note." 15 Engle Street has failed to pay a part of the indebtedness pursuant to the terms of the Note. As such, an event of default pursuant to the terms of the Note has occurred, and 15 Engle Street was notified of same.

13. Upon an event of default, the Note provides that the Lender "may declare the entire unpaid principal balance on the Note and all accrued interest at the Default Interest Rate immediately due, and [the Borrower] will pay that amount." Based on the default of 15 Engle Street pursuant to the terms of the Note, the entire amount of indebtedness is now due, in addition to fees and costs as set forth in the Note. Neither 15 Engle Street nor Kim's Provision have made payment in full under the loan documents.

14. The Security Agreement provides that it is an event of default if a payment under the Note is not paid in full when due and if a default occurs under the terms of any other loan document.

15. Upon default and after notifying Kim's Provision, the Security Agreement provides the remedy of acceleration, thereby making all amounts owed by the Secured Debts immediately due.

### Defendants' Conspiracy to Defraud Plaintiff and Fraudulent Transfers of the Property

16. Plaintiff notified Kim's Provision on January 27, 2012 that a default had occurred. Plaintiff further demanded that, in accordance with the Security Agreement, Kim's Provision provide the location of the Property, including information on its accounts receivable, bank account information, list of current inventory and all other physical assets.

17. Pursuant to its rights under the Security Agreement, Plaintiff further notified Kim's Provision that it could only continue to dispose of its inventory in the ordinary course of business if it provided the demanded information concerning the Property.

18. Kim's Provision never provided the demanded information, despite is obligation to do so under the Security Agreement.

19. On February 23, 2012, in exercise of its rights under the Uniform Commercial Code, Plaintiff seized one of Kim's Provision's delivery trucks, which was among the secured Property. Thereafter, and continuing through early April 2012, representatives of the Kims and Kim's Provision demanded the

return of the delivery truck on the basis that it was needed for the conduct of Kim's Provision's business.

20. On March 16, 2012, Plaintiff filed an order to show cause pursuant to CPLR 7112 in this matter, seeking an order compelling Kim's Provision to appear for a deposition and to produce documents so that the Property could be specifically identified. On March 21, 2012, Court declined to enter the requested order to show cause.

21. Thereafter, in a good faith effort to meet and confer, Plaintiff's counsel made repeated requests of counsel for Kim's Provision to schedule the deposition and to provide the requested information so that the Property could be specifically identified. Kim's Provision refused to agree to produce the requested information.

22. On April 11, 2012, Plaintiff demanded that Kim's Provision permit Plaintiff access to its warehouse on April 19, 2012 so that Plaintiff could identify and assess the Property, and to inspect and copy Kim's Provision's books and financial records. Based on a prior visit, Plaintiff knew that Kim's Provision operated out of two spaces at Hunts Point, Building G-2 and Building D.

23. By letter dated 5:05 p.m. on April 18, 2012, counsel for Kim's Provision rejected the inspection demand.

24.   At various time between January 2012 and April 2012,
representatives of Kim's Provision and the Kims met with and
engaged in discussions with representatives of Plaintiff
concerning the possible settlement and/or resolution of the
various claims against the Kims and Kim's Provision and the
debts owed to Plaintiff.

25.   As late as March 31, 2012, the Kims represented to
Plaintiff that they were drawing an annual salary from Kim's
Provision in the approximate amount of $250,000.  As late as
March 31, 2012, the Kims represented to Plaintiff that their
100% ownership interest in Kim's Provision had an estimated
market value of approximately $3 million.

26.   In violation of, *inter alia*, its obligations under the
Security Agreement, and in breach of their fiduciary
obligations, Kim's Provision and the Kims, with the assistance
and/or active participation of the Jane and John Doe Defendants,
have conspired to and have actively engaged in efforts to
defraud Kim's Provision's and the Kims' creditors, including
Plaintiff, and have taken steps to place their assets out of the
reach of plaintiff and to otherwise improperly divert the assets
of Kim's Provision for the personal benefit of the Kims.

27.   Unbeknownst to Plaintiff, after the Kims and Kim's
Provision were on notice of the default under the loan
documents, and of Plaintiff's demands to inspect the Property,

7

beginning in early March 2012, the Kims and Kim's Provision, with the assistance and/or active participation of the John and Jane Doe Defendants, transferred or conveyed all or substantially all of Kim's Provision's assets to Fancy Foods, Inc. ("Fancy Foods"). The assets transferred or conveyed to Fancy Foods included Kim's Provision's inventory, its warehouse equipment, its delivery trucks, most of its computers, its office furniture, and its customer lists; all of which were part of the Property pledged to Plaintiff. The foregoing property was surreptitiously removed from the warehouse spaces previously occupied by Kim's Provision, and moved to another building in Hunts Point, Building B.

28. The Kims and Kim's Provision, are now using Kim's Provision's employees, inventory, equipment, delivery trucks, customer lists and other assets of Kim's Provision, all of which are pledged as collateral to Plaintiff, to conduct business through Fancy Foods.

29. After conveying Kim's Provision's then existing inventory and other assets to Fancy Foods, the Kims entered into an agreement with Fancy Foods, whereby the Kims would be paid a commission for the sale of the inventory to Kim's Provision's customers, with the balance of the revenue flowing to Fancy Foods.

30. The Kims and Kim's Provision further agreed to permit Fancy Foods to use Kim's Provision's USDA meat license to fabricate and package additional inventory. That additional inventory is and was packaged in boxes under the name U.S. Meat, which is the d/b/a for Kim's Provision. The Kims then sold, and are continuing to sell, that additional inventory through Fancy Foods, and are receiving commissions for the sales of such inventory made to Kim's Provision's customers.

31. But for the Kim's wrongful diversion of Kim's Provision's assets and inventory, all of the sales made by the Kims through Fancy Foods, would have generated sales and revenues for Kim's Provision, the proceeds of which would have, and should have, been available to pay Kim's Provision's creditors, including plaintiff.

32. As a result of the foregoing wrongful conduct, the Kims have diverted all of Kim's Provision's business, sales, revenue and assets to Fancy Foods, in exchange for the payment to the Kims personally of a commission.

33. At all times relevant hereto, Kim's Provision was insolvent or in the zone of insolvency, and unable to meet its debts as they came due.

34. John and Jane Does have wrongfully participated in, assisted or facilitated the Kims' and Kim's Provision's wrongful conduct, and/or received fraudulent transfers of the Property,

and/or the proceeds from the sale of the Property, in violation of Plaintiff's rights.

## COUNT 1
### (Specific Performance)

35. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs as though fully set forth at length herein.

36. Paragraph 5 of the Security Agreement provides that plaintiff has the right of access to the subject property; that Kim's Provision will permit plaintiff to examine and make copies of all books, records and accounts; and that Kim's Provision will provide the location of the Property so that it may be properly identified.

37. Kim's Provision also is obligated to prepare any report or accounting requested by Plaintiff which deals with the Property.

38. On January 27, 2012, Plaintiff sent a demand to Kim's Provision requesting Kim's Provision to provide various information about the Property under the Security Agreement within 10 days of the receipt of the letter. Kim's Provision did not provide such information or otherwise respond to plaintiff's demand.

39. On April 11, 2012, Plaintiff demanded to inspect Kim's Provision's financial books and records and to inspect the

Property on April 19, 2012.  On April 18, 2012, counsel for
Kim's Provision rejected that lawful demand for performance of
Kim's Provision's obligations under the Security Agreement.

## COUNT 2
### (Replevin)

40.  Plaintiff repeats and realleges each and every
allegation set forth in the foregoing paragraphs as though fully
set forth at length herein.

41.  Defendant, Kim's Provision is a signatory to the
Security Agreement, giving Plaintiff a security interest in all
of the Property described in the Agreement, including Kim
Provision's inventory, accounts and other receivables, general
intangibles and equipment.

42.  Kim's Provision is obligated to assemble the Property,
to make it available to Plaintiff, and to turn over possession
to Plaintiff.

43.  Under the Security Agreement, Plaintiff is entitled to
repossess and dispose of the Property, and to apply the proceeds
from any such disposition to Plaintiff's expenses, attorneys'
fees, legal expenses and to the Debt.

44.  Kim's Provision has refused to respond to Plaintiff's
lawful demands and has wrongfully withheld information about the
Property thereby frustrating Plaintiff's ability to identify and
exercise its rights to seize the Property.

45.   Plaintiff is aware of no defense to its claim that would defeat its right to possession.

46.   Kim's Provision should be compelled to comply with its obligations under the Security Agreement, assemble the Property and make it available to Plaintiff for disposition.

## COUNT 3
### (Foreclosure of U.C.C. Security Interest)

47.   Plaintiff repeats and realleges each and every allegationset forth in the foregoing paragraphs as though fully set forth at length herein.

48.   Kim's Provision continues to be in default under its guarantee of the Note and Security Agreement.

49.   Pursuant to Section 9-601(a) of the Uniform Commercial Code in effect in New York, Plaintiff has the right to foreclose upon the collateral owned by Kim's Provision by reason of the default described above.

## COUNT 4

### (Fraudulent Conveyance - Violation of New York Debtor and Creditor Law §276)

50.   Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs as though fully set forth at length herein.

51. Defendant Kim's Provision conveyed the Property under the Security Agreement to Fancy Foods with the actual intent to hinder, delay or defraud plaintiff.

52. The Kims and the John and Jane Doe defendants actively participated in the foregoing wrongful conduct.

53. Based on that fraudulent conveyance, plaintiff seeks damages, a constructive trust, and/or to set aside the conveyances, as well as attorneys' fees.


## COUNT 4a

### (Attorneys' Fees Pursuant to
### N.Y. Debtor and Creditor Law §276-a)

54. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs as though fully set forth at length herein.

55. The fraudulent conveyance of the Property by Kim's Provision to Fancy Foods, as well as to the John and Jane Doe fraudulent transferees, was intentional. The Kims and the John and Jane Doe defendants actively participated in the foregoing wrongful conduct.

56. Plaintiff brings this action to set aside that conveyance.

57. Plaintiff is entitled to attorneys' fees in connection with this action.

## COUNT 5

### (Equitable Fraud)

58. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs as though fully set forth at length herein.

59. As alternative cause of action to the fraudulent conveyance cause of action, Kim's Provision misrepresented its intentions to satisfy the outstanding obligation.

60. Kim's Provision then concealed the transfer of its assets to Fancy Foods with the intent to defraud.

61. The Kims and the John and Jane Doe defendants actively participated in the foregoing wrongful conduct.

62. That conduct amounts to equitable fraud.

## COUNT 6

### (Fraud and Deceit)

63. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs as though fully set forth at length herein.

64. Kim's Provision misrepresented to plaintiff its intention to preserve the collateral under the Security Agreement.

65. Kim's Provision knew such misrepresentations to be false.

66. Kim's Provision made such misrepresentations with the intent to induce plaintiff's reliance upon it.

67. The Kims and the John and Jane Doe defendants actively participated in the foregoing wrongful conduct.

68. Plaintiff justifiably relied upon that misrepresentation and has been damaged.

## COUNT 7

### (Legal Fraud)

69. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs as though fully set forth at length herein.

70. The transfer of assets by Kim's Provision was fraudulent because of its detrimental effect upon public interest and public or private confidence.

71. The Kims and the John and Jane Doe defendants actively participated in the foregoing wrongful conduct.

## Count 8

### (Breach of Fiduciary Duty, Diversion, Waste)

72. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs as though fully set forth at length herein.

73.  At all relevant times, Kim's Provision was insolvent, unable to meet its debts when they came due, and/or in the zone of insolvency.

74.  At all relevant times, the Kims as the 100% owners, officers, directors and/or controlling principals of Kim's Provision owed a fiduciary duty to the creditors of Kim's Provisions and held in trust for the benefit of its creditors, including Plaintiff, the assets of Kim's Provision.

75.  In violation of those fiduciary obligations, the Kims have diverted all, or substantially all of Kim's Provision's assets.  Among those assets include the corporate opportunity to continue selling inventory to Kim's Provision's customers.  The Kims have wholly diverted that opportunity to Fancy Foods, in exchange for the receipt of personal commission payments.

76.  But for the Kims' wrongful conduct in breach of their fiduciary obligations, all sales made by Fancy Foods to Kim's Provision's customers would have been made by, and for the benefit of Kim's Provision, and ultimately its creditors.

77.  As a direct and proximate result of the Kims' breaches of their fiduciary obligations, Plaintiff has been damaged.

## COUNT 9

### (Aiding and Abetting the Commission of Tort)

78. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs as though fully set forth at length herein.

79. The Kims and/or the John and Jane Doe Defendants were aware of the violations of the Security Agreement, and the breaches of fiduciary duty by the Kims and Kim's Provision, but aided and abetted substantially the Kims and Kim's Provision in the foregoing wrongful conduct.

## COUNT 10

### (Punitive Damages)

80. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs as though fully set forth at length herein.

81. Kim's Provision's transfer of assets to defeat plaintiff's security interests was wanton, reckless and malicious.

82. The Kims and the John and Jane Doe defendants actively participated in the foregoing wrongful conduct.

83. Punitive damages against Defendants are necessary to protect society against similar acts.

## PRAYER FOR RELIEF

**WHEREFORE**, the plaintiff, Helicon Partners, LLC, demands judgment against Kim's Provision, Won Ho Kim, Ki Kim, Fancy Foods, jointly and severally, as follows:

(1) Compelling compliance with Kim's Provision's obligation under Section 5 of the Security Agreement to provide Plaintiff with an accounting of, and other information concerning, the Property, including:

    a. a list of Kim's Provision's accounts receivable, including the amounts owed, the name, address and telephone number of the debtors for such accounts;

    b. invoices supporting each of the outstanding accounts receivable;

    c. the name and address of the bank(s) or other financial institution(s) at which Kim's Provision maintain any deposits, monies or other assets, along with the name on any accounts, the account number and account balance;

    d. a list of the current Inventory of Kim's Provision's business and its current selling prices for such Inventory;

    e. a list of all other physical assets of Kim's Provision's business. If any asset is subject to a

lien, state the name and address of the lien holder
and the amount due on the lien;

(2)  Ordering Kim's Provision to permit Plaintiff to make a
physical inspection of its premises and the Property;

(3)  Ordering Kim's Provision to permit inspection and
copying of its books, record and accounts;

(4)  Ordering Kim's Provision to assemble the Property and
turn over possession of the Property to Plaintiff;

(5)  Ordering all Account Debtors, as defined in the
Security Agreement, to pay over to Plaintiff all debts
owed to Kim's Provision;

(6)  Temporarily, preliminarily and permanently enjoining
Kim's Provision from transferring, selling, pledging,
assigning or otherwise disposing of any of the
Property;

(7)  Temporarily, preliminarily and permanently enjoining
any fraudulent transferee of the Property from
transferring, selling, pledging, assigning or otherwise
disposing of any of the Property conveyed to it by
Kim's Provision;

(8)  Entering an order of seizure of the Property directing
the sheriff of any county where the Property is located
to seize the Property, and if the Property is not
delivered to the Sheriff, that the Sheriff may break

open, enter and search for the Property in locations specified by further order of the Court;

(9) Ordering the Property owned by Kim's Provision foreclosed and ordering the Property sold, with the proceeds of such sale applied as follows: first, to the Plaintiff's costs and expenses, including legal fees,; and second, to the payment and satisfaction of the Debt;

(10) For a declaration that any sale of any Property pursuant to order of this Court shall not discharge, extinguish or otherwise derogate from any of Kim Provision's or any other debtor's obligations under the parties' loan documents, until said obligations are paid in full;

(11) Awarding Plaintiff compensatory damages plus interest;

(12) Awarding Plaintiff punitive damages;

(13) Awarding Plaintiff its reasonable attorneys fees, costs and expenses of suit;

(14) Ordering all recipients of the fraudulent transfers to turn over to Plaintiff the Property fraudulently transferred or to pay to Plaintiff the fair market value of any such property that cannot be turned-over;

(15) Ordering all debtors of Kim's Provision to pay any such debts to Plaintiff until the underlying debt is paid in full;

(16) Imposing a constructive trust on the proceeds of any sale, assignment, conveyance, transfer of the Property;

(17) Such other and further relief as the Court shall deem equitable and just under the circumstances.


Dated:    April 26, 2012

By: _____

      SEAN MACK, ESQ.

PASHMAN STEIN, P.C.
1375 Broadway, 10th Floor
New York, New York 10018
Attorneys for Plaintiff
**Helicon Partners, LLC**

## VERIFICATION

STATE OF NEW YORK    }
                        }ss.:
COUNTY OF NEW YORK  }

EDWARD FARBENBLUM, being duly sworn, deposes and says:

    I am the one of the members of plaintiff in this action, and I have read and know the contents of the foregoing Verified First Amended Complaint. The Verified First Amended Complaint is true to my own knowledge, except as to matters alleged upon information and belief, and as to those matters I believe it to be true.

    [remainder of page intentionally left blank]

By: _____
**Edward Farbenblum**

Sworn to before me this
26th day of April, 2012

Notary Public

MILDRED CRISCUOLO
NOTARY PUBLIC-STATE OF NEW YORK
No. 01CR6234660
Qualified In Bronx County
My Commission Expires January 31, 2015

Verification EF

**EXHIBIT A**

# SECURITY AGREEMENT

**DATE AND PARTIES.** The date of this Security Agreement (Agreement) is May 27, 2008. The parties and their addresses are:

**SECURED PARTY:**
    **WOORI AMERICA BANK**
    1250 Broadway
    New York, New York 10001

**DEBTOR:**
    **KIM'S PROVISION CO., INC.**
    A New York Corporation
    Hunts Point Cooperative Market Bldg., G-2
    Bronx, New York 10474

**BORROWER/OBLIGOR:**
    **15 ENGLE STREET LLC**
    A New Jersey Limited Liability Company
    15 Engle Street
    Englewood, New Jersey 07631

The pronouns "you" and "your" refer to the Secured Party. The pronouns "I," "me" and "my" refer to each person or entity signing this Agreement as Debtor and agreeing to give the Property described in this Agreement as security for the Secured Debts.

Where the owner of the Property is different from the obligor or guarantor whose obligation this Agreement secures, "Debtor" refers to each person or entity who is an owner of the Property and "Obligor" or "Guarantor," as applicable, refer to such parties as designated in the SECURED DEBTS section.

**1. SECURED DEBTS.** The term "Secured Debts" includes and this Agreement will secure each of the following:

    **A. Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications and replacements: A promissory note or other agreement, dated May 27, 2008, from 15 ENGLE STREET LLC (Obligor) to you, in the amount of $8,000,000.00.

    **B. Sums Advanced.** All sums advanced and expenses incurred by you under the terms of this Agreement.

Loan Documents refer to all the documents executed in connection with the Secured Debts.

**2. SECURITY INTEREST.** To secure the payment and performance of the Secured Debts, I give you a security interest in all of the Property described in this Agreement that I own or have sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products from the Property (including, but not limited to, all parts, accessories, repairs, replacements, improvements, and accessions to the Property). Property is all the collateral given as security for the Secured Debts and described in this Agreement, and includes all obligations that support the payment or performance of the Property. "Proceeds" includes anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property.

This Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and you are no longer obligated to advance funds to me under any loan or credit agreement.

**3. PROPERTY DESCRIPTION.** The Property is described as follows:

All of the Debtor's properties, rights and assets of every kind and description, now owned or hereafter acquired, tangible or intangible and, including, without limitation, the properties, wherever located, described below and all proceeds (including insurance proceeds) and products thereof, accessions thereto and all books and records relating thereto:

**A. Inventory.** All inventory which I hold for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in my business.

**B. Accounts and Other Rights to Payment.** All rights I have now or in the future to payments including, but not limited to, payment for property or services sold, leased, rented, licensed, or assigned, whether or not I have earned such payment by performance. This includes any rights and interests (including all liens and security interests) which I may have by law or agreement against any Account Debtor or obligor of mine.

**C. General Intangibles.** All general intangibles including, but not limited to, tax refunds, applications for patents, patents, copyrights, trademarks, trade secrets, good will, trade names, customer lists, permits and franchises, payment intangibles, computer programs and all supporting information provided in connection with a transaction relating to computer programs, and the right to use my name.

**D. Equipment.** All equipment including, but not limited to, all machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and recordkeeping equipment, and parts and tools. All equipment described in a list or schedule which I give to you will also be included in the Property, but such a list is not necessary for a valid security interest in my equipment.

**4. WARRANTIES AND REPRESENTATIONS.** I make to you the following warranties and representations which will continue as long as this Agreement is in effect:

**A. Power.** I am duly organized, and validly existing and in good standing in all jurisdictions in which I operate. I have the power and authority to enter into this transaction and to carry on my business or activity as it is now being conducted and, as applicable, am qualified to do so in each jurisdiction in which I operate.

**B. Authority.** The execution, delivery and performance of this Agreement and the obligation evidenced by this Agreement are within my powers, have been duly authorized, have received all necessary governmental approval, will not violate any provision of law, or order of court or governmental agency, and will not violate any agreement to which I am a party or to which I am or any of my property is subject.

**C. Name and Location.** My name indicated in the DATE AND PARTIES section is my exact legal name. I am an entity organized and registered under the laws of New Jersey. I will provide verification of registration and location upon your request. I will provide you with at least 30 days notice prior to any change in my name, address, or state of organization or registration.

**D. Business Name.** Other than previously disclosed in writing to you I have not changed my name or principal place of business within the last 10 years and have not used any other trade or fictitious name. Without your prior written consent, I do not and will not use any other name and will preserve my existing name, trade names and franchises.

**E. Ownership of Property.** I represent that I own all of the Property. Your claim to the Property is ahead of the claims of any other creditor, except as disclosed in writing to you prior to any advance on the Secured Debts. I represent that I am the original owner of the Property and, if I am not, that I have provided you with a list of prior owners of the Property.

**5. DUTIES TOWARD PROPERTY.**

**A. Protection of Secured Party's Interest.** I will defend the Property against any other claim. I agree to do whatever you require to protect your security interest and to keep your claim in the Property ahead of the claims of other creditors. I will not do anything to harm your position.

I will keep books, records and accounts about the Property and my business in general. I will let you examine these and make copies at any reasonable time. I will prepare any report or accounting you request which deals with the Property.

**B. Use, Location, and Protection of the Property.** I will keep the Property in my possession and in good repair. I will use it only for commercial purposes. I will not change this specified use without your prior written consent. You have the right of reasonable access to inspect the Property and I will immediately inform you of any loss or damage to the Property. I will not cause or permit waste to the Property.

I will keep the Property at my address listed in the DATE AND PARTIES section unless we agree I may keep it at another location. If the Property is to be used in other states, I will give you a list of those states. The location of the Property is given to aid in the identification of the Property. It does not in any way limit the scope of the security interest granted to you. I will notify you in writing and obtain your prior written consent to any change in location of any of the Property. I will not use the Property in violation of any law. I will notify you in writing prior to any change in my address, name or, if an organization, any change in my identity or structure.

Until the Secured Debts are fully paid and this Agreement is terminated, I will not grant a security interest in any of the Property without your prior written consent. I will pay all taxes and assessments levied or assessed against me or the Property and provide timely proof of payment of these taxes and assessments upon request.

**C. Selling, Leasing or Encumbering the Property.** I will not sell, offer to sell, lease, or otherwise transfer or encumber the Property without your prior written permission, except for Inventory sold in the ordinary course of business at fair market value, or at a minimum price established between you and me. If I am in default under this Agreement, I may not sell the Inventory portion of the Property even in the ordinary course of business. Any disposition of the Property contrary to this Agreement will violate your rights. Your permission to sell the Property may be reasonably withheld without regard to the creditworthiness of any buyer or transferee. I will not permit the Property to be the subject of any court order affecting my rights to the Property in any action by anyone other than you. If the Property includes chattel paper or instruments, either as original collateral or as proceeds of the Property, I will note your security interest on the face of the chattel paper or instruments.

**D. Additional Duties Specific to Accounts.** I will not settle any Account for less than its full value without your written permission. Until you tell me otherwise, I will collect all Accounts in the ordinary course of business. I will not dispose of the Accounts by assignment without your prior written consent. I will keep the proceeds from all the Accounts and any goods which are returned to me or which I take back. I will not commingle them with any of my other property. I will deliver the Accounts to you at your request. If you ask me to pay you the full price on any returned items or items retaken by me, I will do so. I will make no material change in the terms of any Account, and I will give you any statements, reports, certificates, lists of Account Debtors (showing names, addresses and amounts owing), invoices applicable to each Account, and other data in any way pertaining to the Accounts as you may request.

**6. INSURANCE.** I agree to keep the Property insured against the risks reasonably associated with the Property. I will maintain this insurance in the amounts you require. This insurance will last until the Property is released from this Agreement. I may choose the insurance company, subject to your approval, which will not be unreasonably withheld.

I will have the insurance company name you as loss payee on any insurance policy. I will give you and the insurance company immediate notice of any loss. You may apply the insurance proceeds toward what is owed on the Secured Debts. You may require added security as a condition of permitting any insurance proceeds to be used to repair or replace the Property.

If you acquire the Property in damaged condition, my right to any insurance policies and proceeds will pass to you to the extent of the Secured Debts.

I will immediately notify you of cancellation or termination of insurance. If I fail to keep the Property insured, you may obtain insurance to protect your interest in the Property and I will pay for the insurance on your

demand. You may demand that I pay for the insurance all at once, or you may add the insurance premiums to the balance of the Secured Debts and charge interest on it at the rate that applies to the Secured Debts. This insurance may include coverages not originally required of me, may be written by a company other than one I would choose, and may be written at a higher rate than I could obtain if I purchased the insurance. I acknowledge and agree that you or one or your affiliates may receive commissions on the purchase of this insurance.

**7. COLLECTION RIGHTS OF THE SECURED PARTY.** Account Debtor means the person who is obligated on an account, chattel paper, or general intangible. I authorize you to notify my Account Debtors of your security interest and to deal with the Account Debtors' obligations at your discretion. You may enforce the obligations of an Account Debtor, exercising any of my rights with respect to the Account Debtors' obligations to make payment or otherwise render performance to me, including the enforcement of any security interest that secures such obligations. You may apply proceeds received from the Account Debtors to the Secured Debts or you may release such proceeds to me.

I specifically and irrevocably authorize you to exercise any of the following powers at my expense, without limitation, until the Secured Debts are paid in full:

**A.** demand payment and enforce collection from any Account Debtor or Obligor by suit or otherwise.

**B.** enforce any security interest, lien or encumbrance given to secure the payment or performance of any Account Debtor or any obligation constituting Property.

**C.** file proofs of claim or similar documents in the event of bankruptcy, insolvency or death of any person obligated as an Account Debtor.

**D.** compromise, release, extend, or exchange any indebtedness of an Account Debtor.

**E.** take control of any proceeds of the Account Debtors' obligations and any returned or repossessed goods.

**F.** endorse all payments by any Account Debtor which may come into your possession as payable to me.

**G.** deal in all respects as the holder and owner of the Account Debtors' obligations.

**8. AUTHORITY TO PERFORM.** I authorize you to do anything you deem reasonably necessary to protect the Property, and perfect and continue your security interest in the Property. If I fail to perform any of my duties under this Agreement or any other Loan Document, you are authorized, without notice to me, to perform the duties or cause them to be performed.

These authorizations include, but are not limited to, permission to:

**A.** pay and discharge taxes, liens, security interests or other encumbrances at any time levied or placed on the Property.

**B.** pay any rents or other charges under any lease affecting the Property.

**C.** order and pay for the repair, maintenance and preservation of the Property.

**D.** file any financing statements on my behalf and pay for filing and recording fees pertaining to the Property.

**E.** place a note on any chattel paper indicating your interest in the Property.

**F.** take any action you feel necessary to realize on the Property, including performing any part of a contract or endorsing it in my name.

**G.** handle any suits or other proceedings involving the Property in my name.

**H.** prepare, file, and sign my name to any necessary reports or accountings.

**I.** make an entry on my books and records showing the existence of this Agreement.

**J.** notify any Account Debtor of your interest in the Property and tell the Account Debtor to make payments to you or someone else you name.

If you perform for me, you will use reasonable care. If you exercise the care and follow the procedures that you generally apply to the collection of obligations owed to you, you will be deemed to be using reasonable care. Reasonable care will not include: any steps necessary to preserve rights against prior parties; the duty to send

notices, perform services or take any other action in connection with the management of the Property; or the duty to protect, preserve or maintain any security interest given to others by me or other parties. Your authorization to perform for me will not create an obligation to perform and your failure to perform will not preclude you from exercising any other rights under the law or this Agreement. All cash and non-cash proceeds of the Property may be applied by you only upon your actual receipt of cash proceeds against such of the Secured Debts, matured or unmatured, as you determine in your sole discretion.

If you come into actual or constructive possession of the Property, you will preserve and protect the Property. For purposes of this paragraph, you will be in actual possession of the Property only when you have physical, immediate and exclusive control over the Property and you have affirmatively accepted that control. You will be in constructive possession of the Property only when you have both the power and the intent to exercise control over the Property.

**9. DEFAULT.** I will be in default if any of the following occur:

**A. Payments.** I or Obligor fail to make a payment in full when due.

**B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me, Obligor, or any co-signer, endorser, surety or guarantor of this Agreement or any other obligations Obligor has with you.

**C. Business Termination.** I merge, dissolve, reorganize, end my business or existence, or a partner or majority owner dies or is declared legally incompetent.

**D. Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Agreement.

**E. Other Documents.** A default occurs under the terms of any other Loan Document.

**F. Other Agreements.** I am in default on any other debt or agreement I have with you.

**G. Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.** I fail to satisfy or appeal any judgment against me.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** I change my name or assume an additional name without notifying you before making such a change.

**K. Property Transfer.** I transfer all or a substantial part of my money or property.

**L. Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

**M. Material Change.** Without first notifying you, there is a material change in my business, including ownership, management, and financial conditions.

**N. Insecurity.** You determine in good faith that a material adverse change has occurred in Borrower's financial condition from the conditions set forth in Borrower's most recent financial statement before the date of this Agreement or that the prospect for payment or performance of the Secured Debts is impaired for any reason.

**10. DUE ON SALE OR ENCUMBRANCE.** You may, at your option, declare the entire balance of this Agreement to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. However, if I am in default under this Agreement, I may not sell the inventory portion of the Property even in the ordinary course of business.

**11. REMEDIES.** After I default, and after you give any legally required notice and opportunity to cure the default, you may at your option do any one or more of the following.

**A. Acceleration.** You may make all or any part of the amount owing by the terms of the Secured Debts immediately due.

**B. Sources.** You may use any and all remedies you have under state or federal law or in any Loan Document.

**C. Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.

**D. Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the Secured Debts.

**E. Assembly of Property.** You may require me to gather the Property and make it available to you in a reasonable fashion.

**F. Repossession.** You may repossess the Property so long as the repossession does not involve a breach of the peace. You may sell, lease or otherwise dispose of the Property as provided by law. You may apply what you receive from the disposition of the Property to your expenses, your attorneys' fees and legal expenses (where not prohibited by law), and any debt I owe you. If what you receive from the disposition of the Property does not satisfy the debt, I will be liable for the deficiency (where permitted by law). In some cases, you may keep the Property to satisfy the debt.

Where a notice is required, I agree that ten days prior written notice sent by first class mail to my address listed in this Agreement will be reasonable notice to me under the New York Uniform Commercial Code. If the Property is perishable or threatens to decline speedily in value, you may, without notice to me, dispose of any or all of the Property in a commercially reasonable manner at my expense following any commercially reasonable preparation or processing.

If any items not otherwise subject to this Agreement are contained in the Property when you take possession, you may hold these items for me at my risk and you will not be liable for taking possession of them.

**G. Use and Operation.** You may enter upon my premises and take possession of all or any part of my property for the purpose of preserving the Property or its value, so long as you do not breach the peace. You may use and operate my property for the length of time you feel is necessary to protect your interest, all without payment or compensation to me.

**H. Waiver.** By choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**12. WAIVER OF CLAIMS.** I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

**13. PERFECTION OF SECURITY INTEREST AND COSTS.** I authorize you to file a financing statement covering the Property. I will comply with, facilitate, and otherwise assist you in connection with obtaining perfection or control over the Property for purposes of perfecting your security interest under the Uniform Commercial Code. I agree to pay all taxes, fees and costs you pay or incur in connection with preparing, filing or recording any financing statements or other security interest filings on the Property. I agree to pay all actual costs of terminating your security interest.

**14. APPLICABLE LAW.** This Agreement is governed by the laws of New York, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law. In the event of a dispute, the exclusive forum, venue and place of jurisdiction will be in New York, unless otherwise required by law.

**15. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** Each Debtor's obligations under this Agreement are independent of the obligations of any other Debtor. You may sue each Debtor individually or

together with any other Debtor. You may release any part of the Property and I will still be obligated under this Agreement for the remaining Property. Debtor agrees that you and any party to this Agreement may extend, modify or make any change in the terms of this Agreement or any evidence of debt without Debtor's consent. Such a change will not release Debtor from the terms of this Agreement. If you assign any of the Secured Debts, you may assign all or any part of this Agreement without notice to me or my consent, and this Agreement will inure to the benefit of your assignee to the extent of such assignment. You will continue to have the unimpaired right to enforce this Agreement as to any of the Secured Debts that are not assigned. This Agreement shall inure to the benefit of and be enforceable by you and your successors and assigns and any other person to whom you may grant an interest in the Secured Debts and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**16. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Agreement may not be amended or modified by oral agreement. No amendment or modification of this Agreement is effective unless made in writing and executed by you and me. This Agreement and the other Loan Documents are the complete and final expression of the understanding between you and me. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**17. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Agreement.

**18. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Debtor will be deemed to be notice to all Debtors. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Agreement and to confirm your lien status on any Property. Time is of the essence.

**19. WAIVER OF JURY TRIAL. All of the parties to this Agreement knowingly and intentionally, irrevocably and unconditionally, waive any and all right to a trial by jury in any litigation arising out of or concerning this Agreement or any other Loan Document or related obligation. All of these parties acknowledge that this section has either been brought to the attention of each party's legal counsel or that each party had the opportunity to do so.**

**SIGNATURES.** By signing, I agree to the terms contained in this Agreement. I also acknowledge receipt of a copy of this Agreement.

**DEBTOR:**

Kim's Provision Co., Inc.

By _____
Ki Kim, President

**EXHIBIT B**

# <u>ALLONGE</u>

This allonge forms a part of that certain Promissory Note dated May 27, 2008 in the original principal amount of $8,000,000.00 made by 15 Engle Street LLC to Woori America Bank.

Pay to the order of Helicon Partners, LLC, its successors and/or assigns without recourse, representation and warranty.

Woori America Bank

By: _____

Name: Yong Bong Kim
Title:   First Vice President

# PROMISSORY NOTE
### (Commercial - Single Advance)

**DATE AND PARTIES.** The date of this Promissory Note (Note) is May 27, 2008. The parties and their addresses are:

**LENDER:**
**WOORI AMERICA BANK**
1250 Broadway
New York, New York 10001
Telephone: (212) 244-3000

**BORROWER:**
**15 ENGLE STREET LLC**
a New Jersey Limited Liability Company
15 Engle Street
Englewood, New Jersey 07631

**1. DEFINITIONS.** As used in this Note, the terms have the following meanings:

**A. Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Note, individually and together. "You" and "Your" refer to the Lender.

**B. Note.** Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.

**C. Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note.

**D. Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

**E. Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

**F. Percent.** Rates and rate change limitations are expressed as annualized percentages.

**2. PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, the principal sum of **$8,000,000.00 (Principal)** plus interest from May 27, 2008 on the unpaid Principal balance until this Note matures or this obligation is accelerated.

**3. INTEREST.** Interest will accrue on the unpaid Principal balance of this Note at the rate of **6.750 percent Interest Rate).**



15 Engle Street LLC
New York Promissory Note

NY/4XXkms190009371000051870770520008N          -1996 Bankers Systems, Inc., St. Cloud, MN   C

Initials

Page 1
HP0050

**A. Default Interest Rate.** If you declare a default under the terms of this Loan, including for failure to pay in full at maturity, you may increase the Interest Rate otherwise payable as described in this section. In such event, interest will accrue If you declare a default under the terms of this Loan, including for failure to pay in full at maturity, you may increase the Interest Rate otherwise payable as described in this section. In such event, interest will accrue a Default Interest Rate. The yearly interest rate then in effect can increase to Eighteen (18.00%) percent or the legal maximum interest rate, whichever is lower, if you do not pay the loan on the due date or at maturity, whether by acceleration, default or otherwise.

**B. Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Note will be limited to the maximum lawful amount of interest allowed by state or federal law, whichever is greater. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.

**C. Accrual.** During the scheduled term of this loan, interest will be calculated on the basis of a 360-day year for consisting of twelve, 30-day months for actual numbers elapsed.

**4. ADDITIONAL CHARGES.** As additional consideration, I agree to pay, or have paid, the additional fees and charges requested by the Lender.

**5. REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Note.

   **A. Late Charge.** If a payment is more than 15 days late, I will be charged 5.000 percent of the Amount of Payment or $100.00, whichever is greater. I will pay this late charge promptly but only once for each late payment.

   **B. B. Default.** Any of the following shall be an Event of Default under this Note, and I will be in default hereunder.

      **(a) Payments.** I fail to make a payment in full when due.

      **(b) Insolvency.** The death, dissolution or insolvency, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me or any co-signer, endorser, surety or guarantor of this Agreement or any other obligations I have with you.

      **(c) Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Note or Mortgage.

      **(d) Other Documents.** A default occurs under the terms of any other transaction document.

      **(e) Cross Default.** I or any Guarantor herein is in default on any other debt or agreement I or any Guarantor has with you. You may, at your sale and absolute discretion, declare all other loans to me or any Guarantor herein due and payable and request to pay immediately the full amount of principal which has not been paid and all interest at the Default Interest Rate.

      **(f) Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

      **(g) Judgment.** I fail to satisfy or appeal any judgment against me.

      **(h) Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

      **(i) Na me Change.** I change my name or assume an additional name without notifying you before making such a change.

      **(j) Property Transfer.** I transfer all or a substantial part of my money or property. This condition of

15 Engle Street LLC
New York Promissory Note

Initials 

NY/4XXkms19000937100005187077052008N     -1996 Bankers Systems, Inc., St. Cloud, MN C

Page 2
HP0051

default, as it relates to the transfer of the property, is subject to the restrictions contained in the DUE ON SALE section.

**(k) Property Value.** The value of the Property declines or is impaired.

**(l) Mate rial Change.** Without first notifying you, there is a material change in my business, including ownership, management, and financial conditions..

**(m)Financial Statement.** I fail to provide an operating statement and/or financial statements relating to premises by April of each year or 120 days from the close date of fiscal year as requested by you in form satisfactory to you. The failure to provide the foregoing financial statements on timely basis will allow you, at your sole and absolute discretion, to increases the interest rate, interest rate floor, margin and caps, if applicable, by one percent (1%).

**(n)** any Event of Default occurs under the terms and conditions of the Promissory Note in the principal amount of $3,000,000.00 dated even date herewith made by Kim's Provision Co., Inc., the Guarantor of the obligations evidenced hereby, and any related loan documents.

**(o)** any Event of Default occurs under the terms and conditions of the Promissory Note in the principal amount of $2,000,000.00 dated even date herewith made by Kim's Provision Co., Inc., the Guarantor of the obligations evidenced hereby, and any related loan documents.

**C. Lender's Right.** Upon default, you may declare the entire unpaid principal balance on the Note and all accrued interest at the Default Interest Rate immediately due, and then I will pay that amount

**6. GOVERNING AGREEMENT.** This Note is further governed by the Commercial Loan Agreement executed between you and me as a part of this Loan, as modified, amended or supplemented; and is secured by a certain Mortgage, Assignment of Leases and Rents and Security Agreements respectively dated even date herewith made by me to you, all the terms and conditions of which are hereby incorporated and made a part hereof. The Commercial Loan Agreement states the terms and conditions of this Note, including the terms and conditions under which the maturity of this Note may be accelerated. When I sign this Note, I represent to you that I have reviewed and am in compliance with the terms contained in the Commercial Loan Agreement

**7. PAYMENT.** I agree to pay this Note in **60** payments. The monthly payment is calculated based upon **20-year amortization schedule.** I will make 59 payments of **$60,829.13** beginning on July 1, 2008, and on the 1st day of each and every month thereafter. A single "balloon payment" of the entire unpaid balance of Principal and interest will be due June 1, 2013.

Payments will be rounded to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf.

Each payment I make on this Note will be applied first to any charges that I owe other than principal and interest then to interest that is due, and finally to principal that is due. If you and I agree to a different application of payments, we will describe our agreement on this Note. You may change how payments are applied in your sole discretion without notice to me. The actual amount of my final payment will depend on my payment record.

**8. PREPAYMENT.** A full or partial prepayment of the principal for the entire term of the Loan will be subject to prepayment charge equal to two percentage points (2.00%) of the amount prepaid.

**9. LOAN PURPOSE.** This is a commercial mortgage loan transaction.

**10. DUE ON SALE OR ENCUMBRANCE.** You may, at your option, declare the entire balance of this Note to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. However, if I am in default under this Agreement, I may not sell the inventory portion of the Property even in the ordinary course of business.

**11. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

15 Engle Street LLC
New York Promissory Note

Initials

NY/4XXkms1900093710000051870770520008N          -1996 Bankers Systems, Inc., St. Cloud, MN  C

Page 3

HP0052

**A. Additional Waivers By Borrower.** In addition, I, and any party to this Note and Loan, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Note.

(1) You may renew or extend payments on this Note, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property securing this Note.

(4) You, or any institution participating in this Note, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that any of us signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note.

(7) I agree that you may inform any party who guarantees this Loan of any Loan accommodations, renewals, extensions, modifications, substitutions or future advances.

**B. No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Note, or any other Loan Document, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**12. COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**13. APPLICABLE LAW.** This Note shall be construed and enforced in accordance with and shall be governed by the laws of the State of New York, provided however that matters respecting the creation, perfection, priority and foreclosure of the lien on and security interests in the Property shall be governed by, and constructed and enforced in accordance with, the laws of the State of New Jersey where the Property is located, except to the extent such state laws are preempted by federal law.

**14. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. This Note shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**15. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Note may not be amended or modified by oral agreement. No amendment or modification of this Note is effective unless made in writing and executed by you and me. This Note and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Note is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**16. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

**17. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I agree to sign, deliver, and file any additional documents or

15 Engle Street LLC
New York Promissory Note

NY/4XXkms19000937100005187077052008N          -1996 Bankers Systems, Inc., St. Cloud, MN  C

Initials

Page 4
HP0053

certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**18. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably request. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**19. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**20. WAIVER OF JURY TRIAL. All of the parties to this Note knowingly and intentionally, irrevocably and unconditionally, waive any and all right to a trial by jury in any litigation arising out of or concerning this Note or any other Loan Document or related obligation. All of these parties acknowledge that this section has either been brought to the attention of each party's legal counsel or that each party had the opportunity to do so.**

**21. SIGNATURES.** By signing, I agree to the terms contained in this Note. I also acknowledge receipt of a copy of this Note.

BORROWER:

    15 Engle Street LLC

By _____
    Ki Kim, Managing Member

15 Engle Street LLC
New York Promissory Note

NY/4XXkms19000937100005187077052008N    -1996 Bankers Systems, Inc., St. Cloud, MN  C

Initials

Page 5

HP0054

## *ASSIGNMENT OF LOAN DOCUMENTS*

**WHEREAS Woori America Bank**, a banking corporation, having an office at 1250 Broadway, New York, New York   10001 (the **"Assignor"**), for good and valuable consideration, to it in hand paid by **Helicon Partners LLC**, a limited liability company, having an office at c/o Pinetree Group, Inc. at 547 West 27th Street, New York, New York 10001 (the **"Assignee"**), has sold, assigned, transferred and conveyed, and does hereby sell, assign, transfer and convey to the Assignee such right, title and interest as it may have in and to those certain loan documents set forth herein below, and all sums of money due and to become due thereon with interest.

**NOW, THEREFORE**, for good and valuable consideration the sufficiency of, the Assignor, for itself, its successors and assigns, does hereby assign, transfer and set over to the Assignee, its successors and assigns, all of the Assignor's right, title and interest in and to the following documents attached herewith as Exhibit A:

**IN WITNESS WHEREOF**, the Assignor has duly executed this Assignment on December 29, 2011.

Woori America Bank

By: _____

Name: Yong Bong Kim
Title:   First Vice President

STATE OF NEW YORK     )
                                          ) ss.:
COUNTY OF NEW YORK )

On the 29th day of December in the year 2011 before me, the undersigned, a Notary Public in and for said State, personally appeared Yong Bong Kim, First Vice President of Woori America Bank, personally known to me   or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are)   subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

JERRY JINYOUNG KIM
Notary Public, State of New York
No. 02KI4958130
Qualified in New York County
Commission Expires 01-11 2014

iManage:2435601.1

HP0064

Exhibit C

1. Commercial Loan Agreement dated May 27, 2008 between Woori America Bank and 15 Engle Street LLC.

2. Promissory Note dated May 27, 2008 by 15 Engle Street LLC.

3. Mortgage dated May 27, 2008 from 15 Engle Street LLC to Woori America Bank.

4. Recorded Assignment of Leases and Rents dated May 27, 2008 from 15 Engle Street LLC to Woori America Bank.

5. Security Agreement dated May 27, 2008 by and between Woori America Bank, Kim's Provision Co., Inc, and 15 Engle Street LLC.

6. UCC-1 Financing Statement

7. Guaranties of Ki Kim, Kim's Provision Co., Inc. and Won Ho Kim dated May 27, 2008.

8. Member's Resolution dated May 27, 2008.

9. Environmental Agreement dated May 27, 2008 by 15 Engle Street LLC, Kim's Provision Co., Inc., Ki Kim and Won Ho Kim to Woori America Bank.

10. Undertaking

11. Loan Policy

12. Marked up Title Binder

13. Automatic Transfer Authorization dated May 27, 2008 between 15 Engle Street LLC and Woori America Bank.

14. Agreement to Provide Insurance by Kim's Provision Co., Inc., guarantor (undated).

15. Agreement to Provide Insurance by 15 Engle Street LLC, dated May 27, 2008.

16. Certificate of Corporate Resolutions for Guaranty by Kim's Provision Co., Inc. dated May 27, 2008.

17. Security Agreement by and between Woori America Bank, Kim's Provision Co., Inc. and 15 Engle Street LLC dated May 27, 2008.

18. Certificate of the Member of 15 Engle Street LLC dated May 27, 2008 with Unanimous Written Consent attached.

19. Title Closer Confirmation Letter, dated May 27, 2008.

20. Closing Service Letter dated April 14, 2008.

21. No Tax Escrow by 15 Engle Street LLC.

22. Affidavit of Title by 15 Engle Street LLC dated May 27, 2008.

23. Certificate of Formation for 15 Engle Street LLC dated May 13, 2005.

24. Title Certificate dated April 14, 2008.

25. Operating Agreement of 15 Engle Street LLC.

26. Survey Affidavit of No Change.

# EXHIBIT 3

SUPREME COURT FOR THE STATE OF NEW YORK
COUNTY OF NEW YORK

HELICON PARTNERS, LLC,

Plaintiff,

v.

KIM'S PROVISION CO., INC.; WON
HO KIM; KI KIM; JANE AND JOHN
DOES 1-10,

Defendants.

INDEX NO.:  650499/2012

ORDER OF ATTACHMENT

Plaintiff has moved for an order of attachment pursuant to
CPLR § 6210, etseq., over defendants' property and assets
subject to a Security Agreement entered into by the parties.In
support of the motion, plaintiff has a Verified Amended
Complaint signedApril26, 2012, the affidavit of Sean Mack, Esq.,
sworn to April 26, 2012, and the affirmation of Edward
Farbenblum, sworn to April 26, 2012. It appears to the Court
that, pursuant to C.P.L.R. § 6212(a) there exists a cause of
action; that it is probable that plaintiff will succeed on the
merits; that defendants Kim's Provisions and its principals,
defendants Won Ho Kim and Ki Kim, with knowledge of the default,
have assigned, disposed of, encumbered or secreted property
subject to Plaintiff's security interest with the intent to
defraud Plaintiff or frustrate the enforcement of a judgment
that might be rendered in plaintiff's favor; and that the amount

demanded from defendant exceeds all counterclaims known to the plaintiff. It also appears that notice of this application to defendants will defeat its purpose and permit defendant additional time to continue to dispose of Plaintiff's collateral.

Upon the foregoing papers, and upon hearing Sean Mack, attorney for plaintiff, in support of the motion, and upon the opinion of the court filed April *26*, 2012, and on motion of Sean Mack Esq., attorney for plaintiff, it is

**ORDERED** thatPlaintiff's motion for an order for attachment without notice is granted; and it is further

**ORDERED** that the amount to be secured by this order of attachment, inclusive of probable interest, costs and Sheriff's fees and expenses, shall be $8,000,000; and it is further

**ORDERED** that the plaintiff's undertaking be and the same is hereby fixed in the sum of $ ~~800,000~~ *400,000 OPS* conditioned that the plaintiff shall pay to the defendant an amount not exceeding $ ~~200,000~~ *OPS* for legal costs and damages which may be sustained by reason of the attachment, and up to and not exceeding $ *200,000* to the Sheriff for allowable fees, if the defendant recovers judgment or if it is decided that the plaintiff is not entitled to an attachment of the property of the defendant; and it is further

2

**ORDERED** that the Sheriff of the City of New York, or the

Sheriff of any County of the State of New York, levy within his

jurisdictions on any and all assets of Won Ho Kim, Ki Kim, Kim's

Provisions Company, Inc. (d/b/a U.S. Meat), Warner

International, Inc., Warner Meat, NGF Warner Meat Co., SHK

Holdings, Inc., SHK Equities d/b/a Battery Place Market, New

Golden Gate, Inc., 152 Northern LLC, Eun Ha Soo Catering, Inc.,

including but not limited to all bank accounts and other

tangible property, including the bank accounts, vehicles and

licenses listed on annex A hereto, for the purpose of securing

and satisfying any judgment recovered by the plaintiff herein,

together with interest, costs, disbursements and reasonable

Sheriff's fees, and the Sheriff shall proceed in the manner and

make his return within the time prescribed by law; and it is

further

**ORDERED** that Kim and Kim's Provision are immediately

ordered to permit Plaintiff access to its premises for purposes

of Plaintiff temporarily ~~removing~~ *taking possession of* any computers of Kim or Kim's

Provision located at Hunts Point in buildings G-2, B or D-2 so

that forensic images of the hard drives can be made *on-site* and

thereafter the computers be returned to defendants *possession*, and to the

extent any such computers are on the premises of third parties,

including Fancy Foods, Inc., such third parties shall permit

Plaintiff access to the computers; and it is further

3

ORDERED that Kim and Kim's Provision are immediately ordered to permit Plaintiff access to its offices at Building G-2 for purposes of inspecting and copying all financial books and records; and it is further

**ORDERED** that Defendants are hereby compelled to maintain and preserve all information on the foregoing computers, as well as any other record relating to the assets, inventory and other Property pledged as collateral; and it is further

**ORDERED** that the customers of Kim's Provision (d/b/a U.S. Meat) are hereby directed to pay any monies owed to Kim's Provision *for deliveries made on or before March 5, 2012* directly to Plaintiff. Plaintiff *to counsel to be held in escrow* shall be responsible for maintaining an accounting of all such payments received and to periodically provide a copy of such accounting to counsel for defendants; and it is further *held in escrow*

**ORDERED** that Fancy Foods., Inc. be and hereby is ordered to ~~pay directly to Plaintiff any and~~ all commissions owed or that become owed to Kim, and it is further *or such other period as counsel may agree) shall be provided to counsel for plaintiff.*

*except that any periodic advances made prior hereto up to $2,000 per week may continue to be made in order to allow the business to continue to operate pending a resolution of this dispute and Fancy Foods, Inc. shall maintain records showing all commissions owed, ~~to~~ escrow deposits and advances made ~~such~~ and ~~on~~ a periodic accounting (bi-weekly ~~to the~~*

OPS

OPS

**ORDERED** that within a period not to exceed five days after levy, the plaintiff shall move, on such notice as the court shall direct to the defendants, any garnishee, and the sheriff, for an order confirming the order of attachment.

Dated:    April 27, 2012              ENTER:

                                              *O. P. Sherwood*

        J.S.C.

Pashman Stein, PC
Sean Mack, Esq.
1375 Broadway, 10th Floor
New York, New York 10018
Attorneys for Plaintiff
**Helicon Partners, LLC**

*ORDERED that it is the intention of the court that any physical property levied on shall remain in the possession of defendants for the limited purpose of allowing the business to continue in operation in the ordinary course and that no assets be transferred otherwise; and it is further*

**ANNEX A**

**Bank Accounts:**

Woori America Bank – account number 026007443 – 0727006413

Wilshire State Bank – account number 026013165 – 084302975

Signature Bank – account number 50000001 : 501180188 (NGF inc. DBA NGF Warner Co)

Signature Bank - account number  02601357 1900747672 (Warner International Inc.)

Capital One – account number  00005394005739 (152 Northern LLC )

Chase - account number  0137553136500030004

New Bank - account number  1115000992 (New Golden Gate Inc,)

Indus America Bank -  account number  10011000031 (Ki Kim)

New Bank – account numbers 3115001178 and 3115000311 (SHK)


**Vehicles:**

1999 International 4000 – Cab Vin#: 1htscabk9xh204752 Tag# 35020jk
2006 International 4000 – Cab Vin #: 1htmkaan76h25444 Tag# 75043pa


**Licenses:**
Kim's Provision Co., Inc. (d/b/a U.S Meat) USDA License

# EXHIBIT 4

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SAN DIEGO
BOSTON
HOUSTON
LOS ANGELES
HANOI
HO CHI MINH CITY
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
BOCA RATON
LAKE TAHOE

MEXICO CITY
ALLIANCE WITH
MIRANDA & ESTAVILLO

DIRECT DIAL: 212.692.1055
PERSONAL FAX: 212.202.6040
*E-MAIL:* tshar@duanemorris.com

*www.duanemorris.com*

May 7, 2012

VIA E-MAIL

Hon. Stuart M. Bernstein
U. S. Bankrutpcy Court,
Southern District of New York
One Bowling Green
New York, NY 10004-1408

Re: Bankruptcy Petition #: 12-11820-smb

Dear Judge Bernstein:

We represent NGF, Inc. d/b/a NGF Warner Co. ("NGF") in the above referenced matter.

We have just learned that there is a hearing tomorrow with respect to Helicon Partners LLC's motion for TRO. Given the lack of time to submit a more formal briefing, we write to advise the Court that NGF would like to be heard on the matter and to provide Your Honor with a brief statement of NGF's position.

It is NGF's position that Helicon improperly obtained an Order of Attachment from the Supreme Court of New York (Index No. 650499/2012) on April 27, 2012, as it relates to NGF. That action was brought by Helicon against Kim's Provision, Won Ho Kim and Ki Kim (collectively the "defendants"). NGF is not a party to the state court action, and is not owned, controlled or affiliated with the defendants. It appears that Helicon obtained the Order without showing any proof that NGF is in anyway owned or controlled by the defendants. I have explained this to Mr. Sean Mack, counsel to Helicon, but to no avail.

Attached to this letter as an Exhibit A is an acknowledgment letter signed by Won Ho Kim, the principal of the defendants, which states that the defendants do not own, control or are affiliated with NGF.

Based on the papers submitted by Helicon, it appears that Helicon believes that NGF is a joint venture between NGF, Inc. and Warner International, one of the companies controlled by

**DuaneMorris**

the defendants. (See Helicon brief at ¶50 "NGF Warner is believed to be some type of joint venture between Warner International, Inc . and NGF, Inc." *citing* Farbenblum Cert.) However, Helicon did not submit any information in forms of evidentiary proof that NGF is in fact a such joint venture as required by CPLR. It appears that Helicon's request was based on its information and belief, which is not sufficient under CPLR. *See. Heller v. Frota Oceanica E. Amazonica, S.A.*, 18 Misc. 3d 1103(A), 856 N.Y.S.2d 24 (Sup 2007).

Most importantly, the Order states that plaintiff moved pursuant to CPLR § 6210 which requires a notice to the parties. However, NGF was not given any such notice. NGF is not even a party to the Helicon's action against the defendants. NGF become aware of this Order only after its account was frozen.

The state court Order required that plaintiff move the court by May 4, 2012 to confirm the Order of Attachment. That date, Helicon removed the state court action to the bankruptcy court. It now appears that having improperly received an Order of Attachment from the stated court, without giving a notice to NGF and under inadequate grounds, Helicon now seeks this Court to confirm the state court's Order.

If Helicon wishes to levy any of NGF's accounts, it should be required to name NGF as a defendant and seek an order under proper grounds. As the Court is aware, an order of attachment is an extraordinary measure. The proper step for Helicon is to get a judgment against NGF if it believes that NGF has somehow obtained the funds improperly, and not attach NGF's account without giving any notice.

Accordingly, NGF respectfully requests that this Court dissolve an order of attachment as against NGF and direct Helicon to pay for the damages incurred by NGF as outlined in the Order and CPLR.

Respectfully submitted

T. Steven Har

TSH:kh

Cc Sean Mack, Esq. counsel for Helicon Partners LLC
   Sangwon Sohn, Esq. counsel for the defendants

4-A

Exhibit A

**NGF Inc.**
**40 West 116th St**
**Unit A-1102**
**New York, NY 10026**

May 6, 2012

Mr. Won Ho Kim
25 Tweed Blvd.
Nyack, NY 10960

Dear Mr. Kim,

**Re: Acknowledgement of Money Owed**

During our discussions, you have acknowledged and confirmed the following:

1. NGF Inc. d/b/a NGF Warner Co. ("NGF") purchased Warner International's inventories on March 12, 2011.

2. NGF used a part of Kim's Provision's warehouse located at Hunts Point Building G-2 and paid for such use.

3. NGF outsourced to Kim's Provision, for the use of certain employees, facilities, and the truck. NGF paid Kim's Provision for this outsourcing.

4. You or Ki Kim or Kim's Provision has no ownership interest in NGF.

5. NGF is not affiliated in anyway with you or Ki Kim or any of your and Ki Kim's companies.

6. You, Ki Kim, Kim's Provision or any of your affiliated companies do not have any rights or interest to the NGF's account at Signature Bank.

7. You, Kim's Provision and/or Warner International used funds belonging to NGF without NGF's authorization from February 28, 2011 to April 20, 2012.

a. These funds were payments made by NGF's customers for the products they purchased from NGF.

b. The amount of the NGF funds that you, Kim's Provision and/or Warner International used without NGF's authorization total $663,289.42.

c. You, Ki Kim and/or Kim's Provision have agreed to pay back the total amount of $663,289.42 to NGF as soon as possible.

Please acknowledge the above by signing this letter.

Very truly yours,

Eunjeong Lee

I AM IN AGREEMENT WITH THE UNDERSTANDING SET FORTH ABOVE.

Date: 5 6/12 _____

Won Ho Kim

DM1-3315753.1

# EXHIBIT 5

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SAN DIEGO
BOSTON
HOUSTON
LOS ANGELES
HANOI
HO CHI MINH CITY
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
BOCA RATON
LAKE TAHOE

MEXICO CITY
ALLIANCE WITH
MIRANDA & ESTAVILLO

DIRECT DIAL: 212.692.1055
PERSONAL FAX: 212.202.6040
*E-MAIL:* tshar@duanemorris.com

*www.duanemorris.com*

May 9, 2012

VIA E-MAIL

Hon. Stuart M. Bernstein
U. S. Bankruptcy Court,
Southern District of New York
One Bowling Green
New York, NY 10004-1408

Re: Bankruptcy Petition #: 12-11820-smb

Dear Judge Bernstein:

We represent NGF, Inc. d/b/a NGF Warner Co. ("NGF") in the above referenced matter. This letter is to supplement NGF's May 7, 2012 letter to Your Honor regarding Helicon's motion for TRO.

We have subsequently learned that Signature Bank has transferred some of NGF's funds to Kim's Provision's (the debtor) account, namely the $120K that is in issue which was initially deposited into NGF's account. Based on the bank's counsel's email to Helicon and the debtor, which was annexed to Helicon's motion for TRO, it appears that the bank mistakenly transferred the money.

First, NGF never authorized the bank to transfer the money. Second, there was, as the bank's counsel's email states, a freeze on NGF's and Kim's Provision's account, on April 27, 2012, by the state court order. Despite this order, the bank transferred the $120K from the NGF account to the Kim's Provision account on April 30, 2012. (A copy of Signature Bank's counsel's email is annexed as Exhibit "A.").

It is NGF's position that the $120K should be transferred back to NGF's account, to correct the bank's mistake, and then address the merits of whether NGF's account was improperly frozen. As outlined in NGF's May 7 letter, NGF's account should never have been attached because Helicon improperly obtained the order of attachment, as it relates to NGF.

**DuaneMorris**

As stated in the letter signed by the principal of Kim's Provision, which was submitted with the May 7th letter, NGF is not in any way owned, controlled or affiliated with the debtor Kim's Provision.

Accordingly, it is respectfully requested that the Court direct Signature to transfer back the $120K that was initially deposited into the NGF account, and dissolve the order of attachment as against NGF.

Respectfully submitted

T. Steven Har

TSH:kh


Cc Sean Mack, Esq. counsel for Helicon Partners LLC
    Sangwon Sohn, Esq. counsel for the debtor
    Thomas R. Slome, Esq. counsel for Signature Bank

5-A

Exhibit A

**Diane Visconti**

| | |
|---|---|
| **From:** | Thomas R. Slome <tslome@msek.com> |
| **Sent:** | Wednesday, May 02, 2012 3:34 PM |
| **To:** | Sean Mack; 'swdsohn@gmail.com' |
| **Subject:** | Kim's Provisions |
| **Attachments:** | Thomas Slome.vcf |

**Importance:** High

As I advised each of you already by phone, Signature Bank is holding $87,649.07 in an account in the name of Kim's Provisions, which funds I believe were moved into that account this past Monday from an account in the name of NGF. I also believe that last Friday, Signature Bank was served with an attachment order freezing the accounts of both Kim's Provisions and NGF, and that therefore it appears possible that Monday's transfer should not have occurred. As a result, I believe Helicon Partners is claiming that the monies do not belong to Kim's Provisions and/or that Helicon has an interest in the funds superior to that of Kim's Provisions. In light of these apparent facts and competing ownership and/or other claims to the funds, I have advised Signature Bank not to immediately release the funds to Kim's Provisions, but rather to hold them temporarily and to have me notify each of you that we will seek the guidance of the bankruptcy court.

I am still investigating the facts, but it looks like a $120,000 check payable to US Meat Co. (which may be a d/b/a of Kim's Provisions), was deposited into the account of NGF by Won Kim, the husband of Ki Kim, the owner of Kim's Provisions. When the banker saw that this check had been put into the NGF account even though it was payable to the d/b/a for Kim's Provisions (i.e., US Meat Co.), the banker moved the money into the account of Kim's Provisions thinking that was the right thing to do in light of the attachment order preventing movement of the three entities' funds.

I was informed by Sean that Helicon Partners will be seeking relief from the bankruptcy court concerning these funds in the very near future (i.e., today or more likely tomorrow). I or someone else on behalf of the bank intend to attend any hearing relating to the account in order to request guidance from the court as to the disposition of the funds.

For your information, I will be before Judge Bernstein on an unrelated matter on Judge Bernstein's 10:00 a.m. calendar tomorrow morning, and I suggest that one or both of you call his Chambers today to find out if we can appear before him in connection with this issue at that time or after his calendar, especially if either of you have any concerns about the funds, whether it be with them remaining frozen with them being released.

Please let me know if you have any questions or concerns.

Tom
Thomas R. Slome
Meyer, Suozzi, English & Klein, P.C.
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, NY 11530-9194
Direct Dial: 516-592-5772
Main Phone: 516-741-6565
Fax: 516-741-6706
email: tslome@msek.com
website: www.msek.com


New York Office:
1350 Broadway Suite 501, P.O. Box 822
New York, New York 10018-0822
Direct Dial: 212-763-7072
Main Phone: 212-239-4999

The information transmitted by this electronic mail (and any attachments) is being sent by or on behalf of a lawyer; it is intended for the exclusive use of the addressee named above and may constitute information that is privileged or confidential or otherwise legally exempt from disclosure. If you are not the addressee or an employee or agent responsible for delivering this message to same, you are not authorized to retain, read, copy or disseminate this electronic mail (or any attachments) or any part thereof. If you have received this electronic mail (and any attachments) in error, please reply to this e-mail and send written confirmation that same has been deleted from your system.

Thank you.


**IRS Circular 230 Disclosure**
To ensure compliance with U.S. Treasury regulations we inform you that any U.S. tax advice contained in this communication (including any attachments or enclosures) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any matters addressed herein.

---------------------------------------------------

The information transmitted by this electronic mail (and any attachments) is being sent by or on behalf of a lawyer; it is intended for the exclusive use of the addressee named above and may constitute information that is privileged or confidential or otherwise legally exempt from disclosure. If you are not the addressee or an employee or agent responsible for delivering this message to same, you are not authorized to retain, read, copy or disseminate this electronic mail (or any attachments) or any part thereof. If you have received this electronic mail (and any attachments) in error, please reply to this e-mail and send written confirmation that same has been deleted from your system.
Thank you.

# EXHIBIT 6

**DuaneMorris®**

| | |
|---|---|
| *FIRM and AFFILIATE OFFICES* | |
| NEW YORK | |
| LONDON | |
| SINGAPORE | |
| PHILADELPHIA | |
| CHICAGO | |
| WASHINGTON, DC | |
| SAN FRANCISCO | |
| SAN DIEGO | |
| BOSTON | |
| HOUSTON | |
| LOS ANGELES | |
| HANOI | |
| HO CHI MINH CITY | |
| ATLANTA | |
| BALTIMORE | |
| WILMINGTON | |
| MIAMI | |
| PITTSBURGH | |
| NEWARK | |
| LAS VEGAS | |
| CHERRY HILL | |
| BOCA RATON | |
| LAKE TAHOE | |
| | |
| MEXICO CITY | |
| ALLIANCE WITH | |
| MIRANDA & ESTAVILLO | |

DIRECT DIAL: 212.692.1055
PERSONAL FAX: 212.202.6040
*E-MAIL:* tshar@duanemorris.com

*www.duanemorris.com*

May 10, 2012

VIA E-MAIL

Hon. Stuart M. Bernstein
U. S. Bankruptcy Court,
Southern District of New York
One Bowling Green
New York, NY 10004-1408

> Re: Bankruptcy Petition #: 12-11820-smb

Dear Judge Bernstein:

We represent NGF, Inc. d/b/a NGF Warner Co. ("NGF") in the above referenced matter. This letter is to supplement NGF's May 7, 2012 and May 9, 2012 letters to Your Honor regarding Helicon's motion for TRO.

Annexed to this letter is an Affidavit of Eunjeong Lee, the president and sole owner of NGF stating that NGF is not owned, controlled or affiliated with the debtor or the debtor affiliated companies. Further, as stated in the Lee Affidavit, NGF pays for using Kim's Provision's warehouse space, employees and facilities.

Additionally, as the Affidavit states the subject $120K is a payment from one of the debtor related companies, U.S. Meat Co., for the goods that NGF supplied. As of April 20, 2012, the AR from U.S. Meat was $137,500.54. And on April 26, 2012, U.S. Meat paid $120K into NGF's account at Signature Bank. Thus contrary to Helicon's assertions, the payment of $120K is neither fraudulent nor preferential conveyance. It was done in ordinary course of business.

Annexed to the Lee Affidavit as Exhibit "D" is an acknowledgment letter signed by Won Ho Kim, who is the principal of the debtor and the debtor related companies, verifying that he in fact deposited into NGF's account $120K which was payment for the products received from NGF. Mr. Kim further verifies that he nor any of his related companies are claiming any rights to the $120K, since the money rightfully belongs to NGF.

**DuaneMorris**

Respectfully submitted

T. Steven Har

TSH:kh

Cc Sean Mack, Esq. counsel for Helicon Partners LLC
    Sangwon Sohn, Esq. counsel for the debtor
    Thomas R. Slome, Esq. counsel for Signature Bank

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | CASE No. 12-11820 SMB |
| KIM'S PROVISION CO., INC. | AFFIDAVIT OF EUNJEONG LEE |
| Debtor. | |

Eunjeong Lee, being duly sworn, deposes and says:

1.    I am the president and sole owner of NGF Inc. d/b/a/ NGF Warner Co. ("NGF"). I submit this affidavit in opposition to the Helicon Partners LLC's Motion for Temorary Restraint Order to confirm the Attachment Order (Index No. 650499/2012) as it relates to the bank account of NGF at Signature Bank. Unless otherwise stated, the facts stated herein are based on my personal knowledge.

2.    NGF, Inc. was incorporated on July 30, 2010. (Certificate of Incorporation is annexed as Exhibit "A").

3.    NGF, Inc. filed a Certificate of Assumed Name on March 18, 2011 and began doing business as NGF, Inc. d/b/a NGF Warner Co. (Exhibit "B").

4.    Won Ho Kim, Ki Kim, Kim' Provision, and/or Warner International have no ownership interest or control over NFG.

5.    NGF is not a joint venture between Angus America, Inc. and Warner International, as claimed by Helicon Partners LLC., or any of the Kim's affiliated companies.

6.    NGF is not affiliated with Won Ho Kim, Ki Kim or any of the Kim's companies.

7.    NGF purchased Warner International's inventories on March 12, 2011.

8.    NGF uses a part of Kim's Provision's warehouse located at Hunts Point Building G-2, where the inventories were located, and pays for such use to Kim's Provision.

9. NGF also outsources to Kim's Provision, the use of certain Kim's Provision employees, facilities, and the truck. NGF pays for such outsourcing. (A copy of weekly expenses for such outsourcing is annexed as Exhibit "C")

10. NGF also supplied products to U.S. Meat Co., Kim's Provision and Warner International since February 28, 2011 to April 20, 2012. As of April 20, 2012, U.S. Meat Co. owed NGF $137,500.54.

11. As a part of payment for the outstanding balance, U.S. Meat paid NGF with a check in the amount of $120,000 which was deposited into the NGF account at Signature Bank on April 26, 2012. This check was payable to U.S. Meat, which was endorsed by Won Ho Kim. (Annexed as Exhibit "D" is a letter signed by Won Ho Kim acknowledging that he endorsed the $120K check and paid NGF for purchases that U.S. Meat made from NGF.)

12. On April 27, 2012, NGF's account at Signature Bank (account number: 50000001 : 501180188) was frozen subject to the Attachment Order issued by the New York County Supreme Court. The Attachment Order obtained by Helicon had included NGF's account in the attached list of bank accounts to be levied despite the fact that NGF was not a defendant in that action.

13. On April 30, 2012, without my authorization, Signature Bank transferred $120K out of NGF account and into the Kim's Provision account.

**NGF is neither a shell company nor an alter ego of any one of the defendants; NGF is not a joint venture between Warner International and Angus America**

14. I understand that Helicon is claiming that NGF is an alter ego of the Kims or the Kim affiliated companies. Helecon's claim is false. As stated above, NGF is neither owned/controlled by nor is affiliated to the Kims or any of the Kim affiliated companies. NGF is an entity separate to any and all of them.

15.     NGF was never established as a joint venture between Warner International and Angus America, as claimed by Helicon. I possess ownership over both NGF and Angus America. On the other hand, Warner International is owned by or affiliated with the Kims. Further, the Kims and/or Warner International do not have any ownership interest in either of the two entities I own and I do not have any interest or control in Warner International. As stated above, NGF was formed under my sole ownership and to this day continues to operate under my control.

16.     NGF did engage in business transactions as an independent business party with Warner International and also Kim's Provisions . On March 12, 2011, NGF purchased Warner International's inventories and thereafter subleased a part of Kim's Provision's warehouse located at Hunts Point Building G-2 which were all paid for. NGF outsourced to Kim's provision, for the use of certain employees, facilities, and the truck. NGF paid Kim's Provision for this outsourcing. These activities were all ordinary business transactions carried out by NGF as an independent entity distinct from Warner International and Kim's Provisions. These transactions did not create or intend to create an ownership interest in NGF to Warner International or Kim's Provisions (or any of the Kim parties).

**NGF is a competing claimant to the assets of the Kims and the Kim companies.**

17.     As I clarified above, NGF is not a shell company or an alter ego of any of the defendants or companies affiliated with the defendants, but is rather a creditor to the assets of the Kims and the Kim companies.

18.     Defendants Won Ho Kim, Kim's Provision and/or Warner International purchased products from NGF from February 28, 2011 to April 20, 2012. The outstanding balance as of April 20, 2012 is $137,500.54.

19. Because NGF's account at Signature Bank is frozen, NGF's business is interrupted and NGF is suffering damages and losses on a daily basis.

Eunjeong Lee

Sworn to before me this
9 th day of _May_ , 2012

Notary Public

JULIE L. WATTS
NOTARY PUBLIC, State of New York
No. 01WA5014288
Qualified in Nassau County
Commission Expires July 15, 2015

6-A

# Exhibit A

**DRAWDOWN**

RECEIVED 2010 JUL 30 PM 2:07

1 00730000 708

# CERTIFICATE OF INCORPORATION

## OF

## NGF, INC.

STATE OF NEW YORK
DEPARTMENT OF STATE
FILED JUL 3 0 2010
TAX $ _____ 10 _____
BY: _____ JTG _____
_____ WESTCHESTER _____

JTG
10

2010 JUL 30 PM 3:03

Filed by:

Canavan & Kaufman, Esqs.
One Barker Avenue
4th Floor
White Plains, New York 10601

777

100730000 *708*

GW~13

# CERTIFICATE OF INCORPORATION
## NGF, INC.

Under Section 402 of the Business Corporation Law.

The undersigned, for the purpose of forming a corporation pursuant to Section 402 of the Business Corporation Law of the State of New York, does hereby certify and set forth:

FIRST: The name of the corporation is **NGF, INC.**

SECOND: The purposes for which the corporation is formed are:

To engage in any lawful act or activity for which corporations may be organized under the business corporation law, provided that the corporation is not formed to engage in any act or activity which requires the act or approval of any state official, department, board, agency or other body without such approval or consent first being obtained.

To carry on a general mercantile, industrial, investing and trading business in all its branches; to devise, invent, manufacture, fabricate, assemble, install, service, maintain, alter, buy, sell, import, export, license as licensor or licensee, lease as lessor or lessee, distribute, job, enter into, negotiate, execute, acquire, and assign contracts in respect of, acquire, receive, grant, and assign licensing arrangements, options, franchises, and other rights in respect of and generally deal in and with at wholesale and retail, as principal, and as sales, business, special, or general agent, representative, broker, factor, merchant, distributor, jobber, advisor, or in any other lawful capacity, goods, wares, merchandise, commodities, and unimproved, improved, finished, processed and other real, personal and mixed property of any and all kinds, together with the components, resultants, and by-products thereof.

To create, manufacture, contract for, buy, sell, import, export, distribute, job and generally deal in and with, whether at wholesale or retail, and as principal, agent, broker, factor, commission merchant, licensor, licensee or otherwise, any and all kinds of goods, wares, and merchandise, and in connection therewith or independent thereof, to establish and maintain, by any manner or means, buying offices, distribution centers, specialty and

other shops, stores, mail-order establishments, concessions, leased departments, and any and all other departments, sites and locations necessary, convenient or useful in the furtherance of any business of the corporation.

To develop, experiment with, manufacture, fabricate, produce, assemble, buy, lease or otherwise acquire, hold, own, operate, use, install, equip, maintain, service, process, possess, repossess, remodel recondition, transport, import, export, sell, lease or otherwise dispose of and generally to deal in and with any and all kinds of raw materials, products, manufactured articles and products, equipment, machinery, devices, systems, parts, tools and implements, apparatus, and goods, wares, merchandise and tangible property of every kind, used or capable of being used for any purpose whatsoever, and wheresoever located.

To acquire by purchase, subscription, underwriting or otherwise, and to own, hold for investment, or otherwise, and to use, sell, assign, transfer, mortgage, pledge, exchange or otherwise dispose of real and personal property of every sort and description and wheresoever situated, including shares of stock, bonds, debentures, notes, scrip, securities, evidences of indebtedness, contracts or obligations of any corporation or association, whether domestic or foreign, or of any firm or individual or of the United States or any state, territory or dependency of the United States or any foreign country, or any municipality or local authority within or without the United States, and also to issue in exchange therefor, stocks, bonds or other securities or evidences of indebtedness of this corporation and, while the owner or holder of any such property, to receive, collect and dispose of the interest, dividends and income on or from such property and to possess and exercise in respect thereto all of the rights, powers and privileges of ownership, including all voting powers thereon.

To construct, build, purchase, lease or otherwise acquire, equip, hold, own, improve, develop, manage, maintain, control, operate, lease, mortgage, create liens upon, sell, convey or otherwise dispose of and turn to account, any and all plants, machinery, works, implements and things or property, real and personal, of every kind and description, incidental to, connected with, or suitable, necessary or convenient for any of the purposes enumerated herein, including all or any part or parts of the properties, assets, business and goodwill of any persons, firms, associations or corporations.

The powers, rights and privileges provided in this certificate are not to be deemed to be in limitation of similar, other or additional powers, rights and privileges granted or permitted to a corporation by the Business Corporation Law, it being intended that this corporation shall have all rights, powers and privileges granted or permitted to a corporation by such statute.

THIRD: The office of the corporation is to be located in the County of Westchester, State of New York.

FOURTH: The aggregate number of shares which the corporation shall have the authority to issue is Two Hundred (200), all of which shall be without par value.

FIFTH: The Secretary of State is designated as the agent of the corporation upon whom process against it may be served. The post office address to which the Secretary of State shall mail a copy of any process against the corporation served on him is:

> John L. Kaufman, Esq.
> One Barker Avenue
> 4th Floor
> White Plains, New York 10601

SIXTH: The personal liability of directors to the corporation or its shareholders for damages for any breach of duty in such capacity is hereby eliminated except that such personal liability shall not be eliminated if a judgment or other final adjudication adverse to such director establishes that his acts or omissions were in bad faith or involved intentional misconduct or a knowing violation of law or that he personally gained in fact a financial profit or other advantage to which he was not legally entitled or that his acts violated Section 719 of the Business Corporation Law.

IN WITNESS WHEREOF, this certificate has been subscribed to this 30th day of July, 2010 by the undersigned who affirms that the statements made herein are true under the penalties of perjury.

*Laurence A. Kirsch*

LAWRENCE A. KIRSCH
90 State Street
Albany, New York 12207

6-B

# Exhibit B

# IWG-14

2011031806

NYS Department of State
Division of Corporations, State Records and UCC
41 State Street, Albany, NY 12231-0001
www.dos.state.ny.us

## Certificate of Assumed Name
*Pursuant to General Business Law, §130*

**1. NAME OF ENTITY**

NGF, INC.

**1a.** *FOREIGN ENTITIES ONLY. If applicable, the fictitious name the entity agreed to use in New York State is:*

**2. NEW YORK LAW FORMED OR AUTHORIZED UNDER (CHECK ONE):**

| | | | |
|---|---|---|---|
| X | Business Corporation Law | ___ | Limited Liability Company Law |
| ___ | Education Law | ___ | Not-for-Profit Corporation Law |
| ___ | Insurance Law | ___ | Revised Limited Partnership Act |
| ___ | Other (specify law): | | |

**3. ASSUMED NAME**

NGF WARNER CO.

**4. PRINCIPAL PLACE OF BUSINESS IN NEW YORK STATE (MUST BE NUMBER AND STREET. IF NONE, INSERT OUT-OF-STATE ADDRESS)**

40 WEST 116TH STREET, APT. A1102

NEW YORK, NY 10026

**5. COUNTIES IN WHICH BUSINESS WILL BE CONDUCTED UNDER ASSUMED NAME**

____ ALL COUNTIES (if not, circle county[ies] below)

| | | | | | | |
|---|---|---|---|---|---|---|
| Albany | Clinton | Genesee | Monroe | Orleans | Saratoga | Tompkins |
| Allegany | Columbia | Greene | Montgomery | Oswego | Schenectady | Ulster |
| Bronx | Cortland | Hamilton | Nassau | Otsego | Schoharie | Warren |
| Broome | Delaware | Herkimer | New York | Putnam | Schuyler | Washington |
| Cattaraugus | Dutchess | Jefferson | Niagara | Queens | Seneca | Wayne |
| Cayuga | Erie | Kings | Oneida | Rensselaer | Steuben | Westchester |
| Chautauqua | Essex | Lewis | Onondaga | Richmond | Suffolk | Wyoming |
| Chemung | Franklin | Livingston | Ontario | Rockland | Sullivan | Yates |
| Chenango | Fulton | Madison | Orange | St. Lawrence | Tioga | |

**6. INSERT THE ADDRESS OF EACH LOCATION WHERE BUSINESS WILL BE CARRIED ON OR TRANSACTED UNDER THE ASSUMED NAME.** Use a continuous sheet, if needed. (The address must be set forth in terms of a number and street, city, state and zip code. Please note that the address(es) reflected in paragraph 6 must be within the county(ies) circled in paragraph 5. If the entity does not have a specific location where it will conduct business under the assumed name please check the statement below.)

355 Food Center Dr #62    Bronx County

Bronx, NY  10474

____ No New York State Business Location

2011031800

INSTRUCTIONS FOR SIGNATURE: If corporation, by an officer; if limited partnership, by a general partner; if limited liability company, by a member or manager or by an attorney-in-fact or authorized person for such corporation, limited partnership, or limited liability company.

Eunjeong Lee  president

Name and Title                                    Signature

# CERTIFICATE OF ASSUMED NAME
## OF

**IWG-14**

NGF, INC.

*(Insert Entity Name)*

Pursuant to §130. General Business Law

FILER'S NAME AND MAILING ADDRESS

John L. Kaufman, Esq.

One Barker Avenue

White Plains, NY 10601

NOTE: This form was prepared by the New York State Department of State. You are not required to use this form. You may draft your own form or use forms available at legal stationery stores. The Department of State recommends that all documents be prepared under the guidance of an attorney. The certificate must be submitted with a $25 fee. The Department of State also collects the following, additional, county clerk fees for each county in which a corporation does or transacts business: $100 for each county within New York City (Bronx, Kings, New York, Queens and Richmond) and $25 for each county outside New York City. All checks over $500 must be certified.

*(For office use only)*

RECEIVED 2011 MAR 17 PM 3:

JUN 18 AM 11:11

kws
100730000708

STATE OF NEW YORK
DEPARTMENT OF STATE
FILED MAR 18 2011
TAX$ 255/24
BY: kws

-2-

```
N. Y. S. DEPARTMENT OF STATE
DIVISION OF CORPORATIONS                    ALBANY, NY  12231-0001
                                FILING   RECEIPT
==============================================================================
ENTITY NAME : NGF, INC.

DOCUMENT TYPE : ASSUMED NAME CERTIFICATE
==============================================================================
   FILER:                                   FILED:  03/18/2011
   ------                                    CASH#:  255124
                                            FILM#:  20110318015
   JOHN L. KAUFMAN, ESQ.
   ONE BARKER AVENUE

   WHITE PLAINS      NY    10601


   PRINCIPAL LOCATION
   ------------------

   40 WEST 116TH STREET
   APT. A1102
   NEW YORK
   NY    10026



   COMMENT:


   ASSUMED NAME
   ------------
   NGF WARNER CO.
```

```
==============================================================================
SERVICE COMPANY  : GERALD WEINBERG, INC.               CODE:   14
                                                       BOX :   47


   FEES      160.00                    PAYMENTS:  160.00
   ----                                --------
   FILING :   25.00                    CASH   :
   COUNTY :  100.00                    CHECK  :  160.00
   COPIES :   10.00                    C CARD :
   MISC   :     .00
   HANDLE :   25.00
                                       REFUND :
                                       ------
==============================================================================
                    DO3HD108                    DOS-281 (04/2007)
```

6-C

# Exhibit C

## Weekly Expense

| 인 건 비 / Week | Amount | Weeks | Total |
|---|---|---|---|
| Henry Choi | 1,000.00 | 1 | 1,000.00 |
| John Choi | 1,000.00 | 1 | 1,000.00 |
| Yongsik Kim | 600.00 | 1 | 600.00 |
| Carlos | 500.00 | 1 | 500.00 |
| Nelson | 450.00 | 1 | 450.00 |
| Sub Total | | | 3,550.00 |
| | | | |
| Roberto(Driver) | 600.00 | 1 | 600.00 |
| Cesar(Helper) | 500.00 | 1 | 500.00 |
| Nelson Jr(Driver) | 600.00 | 1 | 600.00 |
| New Helper | 450.00 | 1 | 450.00 |
| Sub Total | | | 2,150.00 |
| | | | |
| Ke Bum Jung | 1,500.00 | 1 | 1,500.00 |
| Yonghwan Cho | 1,000.00 | 1 | 1,000.00 |
| Jun Jae Kim | 800.00 | 1 | 800.00 |
| Sub Total | | | 3,300.00 |
| | | | |
| 인건비 Total | | | 9,000.00 |
| Insurance/Year | | | |
| Truck Mortgage(I) | 1,858.93 | 4 | 464.73 |
| Truck Mortgage(II) | 1,178.54 | 4 | 294.64 |
| | | | |
| Business | 9,989.78 | 52 | 192.11 |
| W.C. | 3,898.00 | 52 | 74.96 |
| Vehicle | 5,659.00 | 52 | 108.83 |
| Sub Total | | | 375.90 |
| | | | |
| Tel. & MTA/Month | | | |
| Ke Bum Jung | 250.00 | 0.25 | 62.50 |
| Yonghwan Cho | 250.00 | 0.25 | 62.50 |
| Jun Jae Kim | 250.00 | 0.25 | 62.50 |
| Sub Total | | | 187.50 |
| | | | |
| Diesel & Toll/Week | | | |
| | | | |
| Truck(2) | 800.00 | 1 | 800.00 |

| | | | |
|---|---|---|---|
| Rent | 2,500.00 | 1 | -2,500.00 |
| | | | |
| Grand Total | | | 13,622.77 |

2,000

-3,000 :

1,000
3,000.
300

17522.77

10.14.-
Interest (Bank fee)
Y. expire.

Accounting;

6-D

# Exhibit D

May 9, 2012

Mr. Won Ho Kim
25 Tweed Blvd.
Nyack, NY 10960

Dear Mr. Kim,

**Re: Acknowledgement of Payment to NGF**

During our discussions, you have acknowledged and confirmed the following:

1. NGF Inc. d/b/a Warner Co.("NGF") has supplied products to U.S. Meats Co./ Kim's

Provisions/ Warner International (the "Kim companies") since February 28, 2011 to April 20,

2011, for which an outstanding balance is owed.

2. On April 26, 2012, you paid toward that balance by paying NGF in the amount of

$120,000 with an endorsed check. The check was payable to U.S. Meat which you endorsed to

NGF.

3. You acknowledge that the payment was for the outstanding balance owed to NGF by

the Kim companies for the purchases made and that you, Ki Kim, or any of the Kim companies

have any rights to the $120K that was deposited into the NGF account.

Please acknowledge the above by signing this letter.

Very truly yours,

Eunjeong Lee

I AM IN AGREEMENT WITH THE UNDERSTANDING SET FORTH ABOVE.

Date: 5/9/12 _____

Won Ho Kim