UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
HELICON PARTNERS, LLC,                           :
                                                 :
                    Plaintiff,      :
                                                 :
     – against –                              :   Adv. Proc. No. 12-01602 (SMB)
                                                 :
KIM'S PROVISION CO., INC.,                       :
WON HO KIM; KI KIM; JANE                         :
AND JOHN DOES 1-10                               :
                                                 :
                    Defendants.    :
-------------------------------------------------------X

## MEMORANDUM DECISION AND ORDER DENYING
## MOTION TO VACATE ORDER OF ATTACHMENT

**A P P E A R A N C E S:**

PASHMAN STEIN, P.C.
Attorneys for Plaintiff
21 Main Street, Suite 100
Court Plaza South
Hackensack, NJ 07601

    Sean Mack, Esq.
        Of Counsel

DUANE MORRIS LLP
Attorneys for NGF, Inc.
1540 Broadway
New York, NY 10036

    T. Steven Har, Esq.
    Katharine A. Gehring, Esq.
        Of Counsel

LAW OFFICE OF SANGWON D. SOHN
Attorneys for the Debtor
2071 Lemoine Avenue, Suite 301
Fort Lee, NJ 07024-6007

    Sangwon D. Sohn, Esq.
        Of Counsel

MCCARTER & ENGLISH LLP
Attorneys for Charles A. Stanziale, chapter 7 trustee
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102

 Scott Bernstein, Esq.
  Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

 The plaintiff Helicon Partners LLC ("Helicon") commenced this action pre-petition in New York state court against Kim's Provision Co., Inc. (the "Debtor") to recover on a guarantee executed by the Debtor in favor of its affiliate 15 Engle Street LLC ("15 Engle"). Helicon procured an *ex parte* order of attachment (the "Attachment Order") and the sheriff levied on the bank account of NGF, Inc. d/b/a NGF Warner Co. ("NGF"), a non-party. One day after the levy, the Debtor filed a chapter 11 petition in this Court.

 NGF challenges the Attachment Order, and moves to vacate it as a matter of law on several grounds. For the reasons that follow, the Court denies the application, directs that the chapter 7 trustee (the "Trustee") be substituted as the plaintiff in this adversary proceeding and that the caption be amended accordingly, and directs the Trustee to amend the complaint as more fully discussed below, failing which the Attachment Order will be vacated as against NGF.

### BACKGROUND

 At all relevant times, the Debtor has been engaged in the wholesale and retail sale of meat products. It operates out of the Hunts Point Cooperative Market in the Bronx, New York, and does business under the names U.S. Meat and Warner Meat. (Bankruptcy Petition, Exhibit

A (SMB ECF Doc. # 1[1]).)  Ki Kim is the Debtor's sole shareholder.  (*Id.*)  Her husband, Won Ho Kim, also known as Warner Kim, has been in the meat business for thirty years and he is the "Warner" of Warner Meat and NFG Warner.  (Transcript of hearing held May 21, 2012, at p. 7, lines 13-24, p. 100, lines 14-23 ) (AP ECF Doc. # 13).)

Ki Kim also owns 15 Engle, which was formed in 2008 to own the real property located at 15 Engle Street in Englewood, New Jersey.  On May 27, 2008, 15 Engle refinanced its debt borrowing $8 million from Woori America Bank ("Woori") pursuant to a Commercial Loan Agreement and a Promissory Note (the "Note").[2]  The Debtor unconditionally guaranteed 15 Engle's obligations under the Note (the "Guarantee").[3]  Furthermore, to secure 15 Engle's obligations under the Note, the Debtor entered into a Security Agreement,[4] granting Woori a security interest in all of its present and future property, wherever located, including inventory, accounts receivable, equipment, and general intangibles.  (*See* Security Agreement at ¶¶ 2, 3.)

Woori assigned the Note, Security Agreement, and Guarantee to Helicon on December 29, 2011.[5]  According to the Verified First Amended Complaint, dated Apr. 26, 2012,[6] Helicon

---

[1] Although the bankruptcy case was commenced in this Court, (*see* Case No. 12-11820 (SMB)), it was transferred to the United States Bankruptcy Court for the District of New Jersey on June 11, 2012.  (*See* Case No. 12-27247 (MS).)  Thus there are two sets of case dockets.  Citations to "SMB ECF Doc. #" refer to the electronic docket in Case No. 12-11820 (SMB), and citations to MS ECF Doc. #" refer to the electronic docket in Case No 12-27247 (MS).  After a brief sojourn in New Jersey, this adversary proceeding was returned to this Court.  Citations to "AP ECF Doc. #" refer to the electronic docket in this adversary proceeding.

[2] The Note, dated May 27, 2008, is annexed as Exhibit A to the *Certification of Edward Farbenblum*, dated May 2, 2012 ("*Farbenblum Certification*") (SMB ECF Doc. # 6).

[3] The Guarantee, dated May 27, 2008, is annexed as Exhibit B to the *Farbenblum Certification*.

[4] The Security Agreement, dated May 27, 2008, is annexed as Exhibit C to the *Farbenblum Certification*.

[5] The Assignment of Loan Documents, dated December 29, 2011, is annexed as Exhibit D to the *Farbenblum Certification*.

notified the Debtor of its default in late January, (*Verified Amended Complaint* at ¶ 16), and filed an action against the Debtor in New York State Supreme Court in New York County on February 22, 2012. Helicon simultaneously but unsuccessfully demanded information and made certain directions regarding its collateral. (*Id.* at ¶¶ 17-19.) While the parties discussed settlement, (*id.* at ¶ 24), and beginning in early March 2012, the Debtor embarked on a scheme to surreptitiously transfer all of its assets and operations to Fancy Foods, Inc. (*Id.* at ¶ 27.) Following the transfer, the Kims sold Fancy Foods' inventory on commission, essentially operating the Debtor's business through Fancy Foods free of Helicon's interference. (*See id.* at ¶¶ 28-32.)

On or about April 26, 2012, Helicon presented an *ex parte* application for an order of attachment,[7] requesting, *inter alia*, that the New York City sheriff levy on any and all assets of "Won Ho Kim, Ki Kim or Kim's Provisions Company, Inc. (d/b/a U.S. Meat), including but not limited to all bank accounts and other tangible property, for the purpose of securing and satisfying any judgment recovered by the plaintiff herein . . . ." (*Ex Parte Application* at ¶ 1.) In support of the application, Helicon submitted an affirmation of Sean Mack, Helicon's attorney, an affirmation of Edward Farbenblum,[8] a member of Helicon, and the *Verified Amended Complaint*. The *Verified Amended Complaint* named the Debtor, the Kims and Jane and John Doe Defendants, and included ten causes of action. The claims generally fell into three

---

[6]    The Verified First Amended Complaint, dated Apr. 26, 2012 ("*Verified Amended Complaint*") is annexed as Exhibit 2 to the *Declaration of T. Steven Har in Support of NGF's Motion to Vacate or Modify an Order of Attachment*, dated May 15, 2012 ("*Har Declaration*") (AP ECF Doc. # 4).

[7]    The Ex Parte Application for Order of Attachment, dated April 26, 2012 ("*Ex Parte Application*"), is annexed as Exhibit 1 to the *Har Declaration*.

[8]    The *Affirmation in Support of Plaintiff's Motion Pursuant to C.P.L.R. § 6210, et seq., for the Issuance of an Order of Attachment Ex Parte*, sworn to on April 26, 2012 ("*Farbenblum Affirmation*") is annexed as Exhibit 1 to the *Har Declaration*.

categories: direct contract claims under the Security Agreement (Counts 1, 2 and 3) and tort claims sounding in fraud (Counts 5 and 6), actual fraudulent conveyance and related attorneys' fees claims concerning the transfers to Fancy Foods (Counts 4 and 4a),[9] and a derivative claim alleging that the Kims breached their fiduciary duties (Count 8).[10] Finally, Count 9 alleged a claim against the Kims and the Doe defendants for aiding and abetting a breach of fiduciary duty (Count 9) which may be direct or derivative depending on the application of *in pari delicto* and the "adverse interest" exception to that doctrine. *See Kirschner v. KPMG LLP*, 938 N.E.2d 941, 950-54 (N.Y. 2010). The *Verified Amended Complaint* also asserted a claim denominated "Legal Fraud" (Count 7) alleging that the transfer of assets by the Debtor (presumably to Fancy Foods) "was fraudulent because of its detrimental effect upon public interest and public or private confidence," (*Verified Amended Complaint* at ¶ 70), and a separate cause of action for punitive damages (Count 10) that New York law does not recognize. *Light v. W2001 Metropolitan Hotel Realty LLC*, 10 Civ. 4449 (SAS), 2011 WL 2175778, at *3 (S.D.N.Y. June 2, 2011); *Paisley v. Coin Device Corp.*, 773 N.Y.S.2d 582, 583 (N.Y. App. Div. 2004); *Crown Fire Supply Co., Inc. v. Cronin*, 761 N.Y.S.2d 495, 496 (N.Y. App. Div. 2003).

The *Verified Amended Complaint* did not mention NGF, but the *Farbenblum Affirmation* did. For the most part, Mr. Farbenblum's affirmation repeated the same facts alleged in the *Verified Amended Complaint*. However, the final paragraph of his affirmation stated: "[b]ased on my observations, it appears that Kim and Kim's Provision are utilizing bank accounts in the

---

[9] The *Verified Amended Complaint* did not join Fancy Foods as a party-defendant.

[10] Under New York law, a claim for breach of fiduciary by corporate officers or directors belongs to the corporation. *Keene Corp. v. Coleman (In re Keene Corp.)*, 164 B.R. 844, 853 (Bankr. S.D.N.Y. 1994).

5

name of affiliated companies, Warner International, NGF Warner Meat Co., Inc., and Warner Meat." (*Farbenblum Affirmation* at ¶ 24.)

On Friday, April 27, 2012, the state court granted Helicon's *ex parte* application and issued the Attachment Order.[11] The Attachment Order directed that, *inter alia*, the New York City Sheriff levy on any and all assets of the Debtor, the Kims, and several other companies, including "NGF Warner Meat Co." (Attachment Order, fourth "Ordered" paragraph.) On Monday, April 30, 2012, Helicon delivered the Attachment Order to the Sheriffs in New York City and the Bronx. Helicon also sent it directly to several financial institutions, including Signature Bank, where both the Debtor and NGF hold accounts.[12] (*Helicon's Opposition* at ¶¶ 66-67.) Consequently, the bank froze NGF's bank account, which contained approximately $120,000.

The next day, May 1, 2012, the Debtor filed its voluntary chapter 11 petition in this Court. Helicon removed the state court action to the District Court, (SMB ECF Doc. # 14), and the District Court referred the removed action to this Court. (*Id.*) On May 2, 2012, Helicon filed an emergency motion in this Court seeking relief from the automatic stay to continue the Attachment Order and the restraints imposed by it. Helicon gathered additional facts, and the *Farbenblum Certification* submitted in support of Helicon's motion contained more information and documentary evidence regarding NGF's role. First, the Debtor had made cash transfers in recent months to NGF. (*Farbenblum Certification* at ¶ 33 & Ex. F.) Second, NGF was one of several companies through which the Kims ran the Debtor's business after the financial problems

---

[11] The Attachment Order is annexed as Exhibit 2 to the Certification of Sean Mack, dated May 2, 2012 (SMB ECF Doc. # 5).

[12] Pursuant to Section 6214 of New York's Civil Practice Law and Rules a levy must be effected by the sheriff. None of the parties have questioned the method of levy in this case and the Court assumes the levy upon NGF's account was executed properly.

6

surfaced. NGF operated from the Debtor's office at Hunts Point, used the same bookkeeper, and directed its customers to make their payments to Warner International, another entity operated by the Kims. (*Id.* at ¶ 36.)

The Court issued an Order, dated May 8, 2012, scheduling a hearing on Helicon's motion for May 10, 2012. (*See* SMB ECF Doc. # 9.) After the May 10, 2012 hearing, NGF moved by order to show cause to vacate the Attachment Order, (AP ECF Doc. ## 3-6), and the Court entered an order scheduling a hearing on the motion to vacate for May 21, 2012. (AP ECF Doc. # 7.) In response, Helicon filed its *Brief of Secured Creditor, Helicon Partners, LLC in Opposition to Motions to Vacate Freeze on Certain Accounts and in Support of Cross Motion*, dated May 20, 2012 (*Helicon Opposition*) (AP ECF Doc. # 8), which opposed the motion to vacate, and asked the Court (1) to continue the restraints imposed by the Attachment Order, (2) to authorize Helicon to pursue avoidance actions and other claims against NGF and other non-debtor entities on behalf of the estate, and (3) for leave to amend its complaint to substitute NGF and another non-debtor entity for John Doe defendants.

The Court commenced an evidentiary hearing and placed the burden of sustaining the Attachment Order on Helicon. Consistent with the *Farbenblum Certification*, Helicon advanced two theories: (1) NGF was an alter ego of the Debtor and (2) NGF received fraudulent conveyances from the Debtor. On the third day of trial, NGF moved the Court to decide certain threshold issues regarding the propriety of the Attachment Order. NGF contended that the Attachment Order should be vacated as a matter of law because (1) Helicon had failed to move to confirm the Attachment Order within the requisite five days after the levy and (2) the validity of the of the Attachment Order rose or fell based upon the motion papers submitted to the state court which NGF argued were insufficient, and Helicon could not thereafter supplement its proof

to sustain an order issued on insufficient papers. The Court directed the parties to brief the issues, and on the return date, raised two additional questions: (3) does the Debtor have an attachable interest in fraudulently transferred property or property owned by an alter ego and (4) assuming that the Debtor has an attachable interest, could Helicon attach the interest without naming the alleged fraudulent transferee or alter ego (here, NGF) as a defendant in the lawsuit. The parties also submitted supplemental briefs on these issues. Although the Court decided the first two issues from the bench, this opinion will incorporate those dispositions so that the resolution of all of issues is set forth in one decision.

One final note: on December 12, 2012, the New Jersey Bankruptcy Court converted the Debtor's case to a case under chapter 7, (*Order Converting Chapter 11 Case*, dated December 12, 2012 (MS ECF Doc. # 48)), and the United States Trustee appointed Charles A. Stanziale, Esq. to serve as Trustee. (*Notice of Appointment of Trustee*, dated Dec. 13, 2012 (MS ECF Doc. # 49).) As discussed below, his appointment resolves several of the issues (Helicon's motions for stay relief and its standing to prosecute estate claims) and provides a clear path for future proceedings.

## DISCUSSION

### A. Introduction

Attachments under New York law are governed by Article 62 of New York's Civil Practice Law and Rules ("CPLR"). Attachment is a provisional remedy that gives a pre-judgment creditor the ability to secure a defendant's property pending the entry of a final judgment. *Hotel 71 Mezz Lender LLC v. Falor*, 926 N.E.2d 1202, 1207 (N.Y. 2010); *Koehler v. Bank of Bermuda Ltd.*, 911 N.E.2d 825, 828 (N.Y. 2009). A plaintiff may attach any debt or property against which a money judgment can be enforced, CPLR § 6201, including debts owed

8

to the defendant, CPLR § 5201(a), or property the debtor could assign or transfer. CPLR § 5201(b); *Bass v. Bass*, 528 N.Y.S.2d 558, 560-1 (N.Y. App. Div. 1988). To obtain an order of attachment, a plaintiff must establish four elements by affidavit or other written evidence: (1) it has stated a claim for a money judgment, (2) it has a probability of success on the merits (3) at least one of the five attachment grounds listed in CPLR 6201 has been satisfied,[13] and (4) the amount demanded from the defendant is greater than the amount of all counterclaims known to plaintiff. CPLR §§ 6212(a), 6201; *Ford Motor Credit Co. v. Hickey Ford Sales, Inc.*, 465 N.E.2d 330, 334 (N.Y. 1984). Attachment is considered a harsh remedy and courts have strictly construed the statute in favor of those against whom it is employed. *Kornblum v. Kornblum*, 828 N.Y.S.2d 404, 405 (N.Y. App. Div. 2006).

The order of attachment must "direct the sheriff to levy within his jurisdiction, at any time before final judgment, upon such property in which the defendant has an interest and upon such debts owing to the defendant . . . ." CPLR § 6211(a). To levy on personal property, the

---

[13]   Section 6201 of the CPLR provides that

[a]n order of attachment may be granted in any action, except a matrimonial action, where the plaintiff has demanded and would be entitled, in whole or in part, or in the alternative, to a money judgment against one or more of the defendants, when:

1. the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state; or

2. the defendant resides or is domiciled in the state and cannot be personally served despite diligent efforts to do so; or

3. the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts; or

4. the action is brought by the victim or representative of the victim of a crime . . . ; or

5. the cause of action is based on a judgment . . . .

In this case, Helicon is proceeding under the third ground.

sheriff may simply serve the order of attachment on the debtor-defendant or on a garnishee[14] and thereby take constructive possession or custody of the property. CPLR § 6214(a). However, a levy by service on a garnishee "is effective only if, at the time of service, such person owes a debt to the defendant or such person is in the possession or custody of property in which such person knows or has reason to believe the defendant has an interest." CPLR § 6214(b). Alternatively, the sheriff may levy on the property by seizing it, and taking the property into his actual custody. CPLR § 6215.

A plaintiff may obtain an order of attachment with or without notice. If the plaintiff obtains an order of attachment without notice, *i.e., ex parte,* it must move on notice to the defendant, the garnishee and the sheriff to "confirm" the *ex parte* order within five days of the levy. CPLR § 6211(b). The burden of proving the necessity and grounds for the attachment at the hearing to confirm an *ex parte* order of attachment rests with the plaintiff. CPLR § 6211(b) (incorporating CPLR § 6223(b), which provides that "the plaintiff shall have the burden of establishing the grounds for the attachment, the need for continuing the levy and the probability that he will succeed on the merits"). The garnishee is not required to take any affirmative steps by way of motion to vacate the order of attachment. *Bd. of Educ. Of The City of New York v. Treyball*, 446 N.Y.S.2d 417, 418 (N.Y. App. Div. 1982). If the order of attachment is confirmed, or the plaintiff obtains the order on notice, any person with an interest in the attached property may seek to have the order of attachment vacated or modified if it was improperly issued or has become unnecessary to secure the plaintiff's claim. CPLR § 6223(a).

---

[14] "A 'garnishee' is a person who owes a debt to a judgment debtor, or a person other than the judgment debtor who has property in his possession or custody in which a judgment debtor has an interest." CPLR § 105(i).

Finally, if the garnishee fails to deliver the attached property or debt to the sheriff after the levy, the plaintiff may commence a special proceeding against the garnishee to compel the payment or delivery of the property or the debt to the sheriff. CPLR § 6214(d); *Smith v. Amherst Acres, Inc.*, 350 N.Y.S.2d 236, 237 (N.Y. App. Div. 1973). The garnishee may assert any defense or counterclaim that it could have asserted had the plaintiff sued the garnishee in the underlying action. *Id.*; 12 JACK B. WEINSTEIN, HAROLD L. KORN & ARTHUR R. MILLER, NEW YORK CIVIL PRACTICE: CPLR ¶ 6214.13, at 62-150 (2d ed. 2013) ("WEINSTEIN, KORN & MILLER"). The levy becomes void after ninety days except with respect to property or debts in the actual custody of the sheriff or the subject of a special proceeding to compel payment or delivery to the sheriff. CPLR § 6214(e). A court may, however, extend the ninety day period upon a motion made before or after the ninety day period expires. *Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation*, 605 F.2d 648, 652 (2d Cir. 1979); *Kitson & Kitson v. City of Yonkers*, 778 N.Y.S.2d 503, 507 (N.Y. App. Div. 2004); *Kalman v. Neuman*, 420 N.Y.S.2d 287, 288 (N.Y. App. Div. 1979); 12 WEINSTEIN, KORN & MILLER ¶ 6214.15, at 64-153 to 62-154. In addition, any party in interest "may commence a special proceeding against the plaintiff to determine the rights of adverse claimants to the property or debt." CPLR § 6221.

**B.   The Failure to Move to Confirm the Award**

NGF contends that the Attachment Order should be vacated because Helicon failed to move to confirm it within five days after the levy as required under CPLR 6211(b). The sheriff levied on NGF's account on April 30, 2012, and Helicon faced a May 5th deadline to move to confirm the attachment. However, the Debtor filed its chapter 11 petition on May 1, 2012, staying Helicon's action against the Debtor. 11 U.S.C. § 362(a)(1). Helicon could not move to confirm the award without violating the automatic stay, and consequently, Bankruptcy Code §

11

108(c) tolled the five day period until thirty days after the notice of termination or expiration of the automatic stay.[15] The Court has still not yet ruled on Helicon's motion, and the stay remains in effect. Furthermore, Helicon immediately filed an emergency motion on May 2nd for relief from the stay—its only option given the bankruptcy—which served the same purpose as a motion to confirm the Attachment Order. Accordingly, CPLR 6211(b) has been satisfied.

### C.     The Record Supporting the Attachment Order

"To sustain a warrant of attachment a case must be presented against the [non] party whose assets are attached as if it had been sued separately." *Packer v. Caesars World, Inc.*, 387 N.Y.S.2d 851, 852 (N.Y. App. Div. 1976) (citing *Zenith Bathing Pavilion, Inc. v. Fair Oaks Steamship Corp.*, 148 N.E. 532, 533-34 (N.Y. 1925)); *accord Ford Motor Credit Co.*, 465 N.E.2d at 334). I agree with NGF that the application presented to the state court action which has been removed to me does not support the attachment of NGF's property. The *Verified Amended Complaint* did not mention NGF; it alleged that the Debtor fraudulently conveyed all of its assets and business to Fancy Foods. The only mention of NGF appeared in the last paragraph of the Mr. Farbenblum's affirmation that "it appears" that the Debtor is utilizing bank accounts in the name of NGF.

---

[15]     Bankruptcy Code § 108(c) states:

(c) Except as provided in section 524 of this title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, or against an individual with respect to which such individual is protected under section 1201 or 1301 of this title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.

The Court is not, however, limited to the record presented to the state court on the initial application in deciding whether to vacate the Attachment Order. Absent prejudice to a substantial right, the Court may consider the papers and evidentiary facts submitted by the plaintiff in opposition to the motion to vacate, *Am. Jerex Co. v. Universal Aluminum Extrusions, Inc.*, 340 F. Supp. 524, 528 (E.D.N.Y. 1972); *Worldwide Carriers, Ltd. v. Aris Steamship Co. Ltd.*, 301 F. Supp. 64, 66-67 (S.D.N.Y. 1968); *Alex v. Grande*, 285 N.Y.S.2d 909, 911-12 (N.Y. App. Div. 1967), and "give the plaintiff a reasonable opportunity to correct any defect." CPRL § 6223(a); *see also* 7B N.Y.C.P.L.R. § 6223, practice commentaries by Vincent Alexander at 234 (McKinney 2010) ("The reference in CPLR § 6223(a) to the court's discretionary authority to give the plaintiff an opportunity 'to correct any defect' was intended to address shortcomings in plaintiff's showing, as required by CPLR § 6212(a), 'that he has a sufficient cause of action.'"). The court may also grant the plaintiff leave to amend a legally insufficient complaint without vacating the order of attachment where the plaintiff's proof establishes that it may have a cause of action that will support the order of attachment. *See Raimondi v. Fedeli*, 291 N.Y.S.2d 900, 901 (N.Y. App. Div. 1968); *accord Great Lakes Carbon Corp. v. Fontana*, 387 N.Y.S.2d 115, 115 (N.Y. App. Div. 1976).

NGF makes two other arguments that require comment regarding whether Helicon should be allowed to cure any defects by filing an amended complaint. First, NGF contends that any amendment would be futile because Helicon lacks standing to assert the estate's alter ego and fraudulent transfer claims. (*Supplemental Brief in Reply to Helicon Partner, LLC's Opposition Against Non-Party NGF, Inc.'s Emergency Motion to Vacate or Modify Attachment Order*, dated Jan. 14, 2012 [*sic*], at 14-15 (Not filed on ECF).) This argument, however, has been mooted by the substitution of the Trustee as party-plaintiff. The Trustee has standing to assert these claims.

13

Second, NGF contends that it will suffer substantial prejudice if the Attachment Order is not vacated—even if Helicon is allowed to replead—because it will lose the right to sue for damages based on a wrongful attachment. (*Id.* at 16-17.) In essence, NGF seeks to deny Helicon (or the Trustee) a right which the law permits to cure the insufficiency because the exercise of that right may uphold Attachment Order and thereby prejudice NGF's argument that the Attachment Order was wrongful. This is like a party arguing that a Court should not receive relevant evidence because the evidence is harmful to the party's position.

**D.     The Debtor's Interest in NGF's Bank Account**

As is evident from the foregoing discussion, the plaintiff can only attach or levy upon property in which the defendant has an interest. *See* CPLR §§ 6211(a) ("The order shall direct the sheriff to levy . . . upon such property in which *the defendant has an interest*"); 6214(a) ("The sheriff shall levy upon any *interest of the defendant* in personal property"); 6214(b) ("A levy by service of an order of attachment upon a person other than the defendant is effective only if, at the time of service, such person . . . is in the possession or custody of *property in which such person knows or has reason to believe the defendant has an interest . . . .*"); *Bank of New York v. Nickel*, 789 N.Y.S.2d 95, 99 (N.Y. App. Div. 2004) ("It is beyond cavil that attachment will only lie against the property of the debtor, and that the right to attach the property is only the same as the defendant's own interest in it." (internal quotation marks omitted)); *see generally* DAVID D. SIEGEL, NEW YORK PRACTICE § 323 (5th ed. 2012). Helicon has attached NGF's bank account on the theory that it contains funds the Debtor fraudulently transferred to NGF or that NGF is the Debtor's alter ego.

14

### 1. Fraudulently Transferred Property

At first glance, it would appear that a defendant-transferor does not retain any interest in fraudulently transferred property. The transferee enjoys title and possession, and under New York law, the transferor lacks standing to avoid its own fraudulent transfer. *Eberhard v. Marcu*, 530 F.3d 122, 129-131 (2d Cir. 2008). Moreover, although not determinative of the state law question raised by these proceedings, fraudulently transferred property does not become property of the bankruptcy estate until it is recovered. *See* 11 U.S.C. § 541(a)(3). Nevertheless, it is well settled under New York law dating back more than 100 years that a plaintiff may attach fraudulently transferred property. *See Hess v. Hess*, 22 N.E. 956, 956 (N.Y. 1889); *Rinchey v. Stryker*, 28 N.Y. 45, 54 (1863); *Mandl v. Mandl*, 61 N.Y.S.2d 364, 367 (N.Y. Sup. Ct. 1946).

The right is now codified in New York's Debtor and Creditor Law ("DCL") § 278, which states in pertinent part:

> 1. Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser,
>
> a. Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or
>
> b. *Disregard the conveyance and attach or levy execution upon the property conveyed.*

DCL § 278(1) (emphasis added);[16] *accord Glassman v. Glassman*, 131 N.E.2d 721, 724-25 (N.Y. 1956) (Fuld, J.) (title to fraudulently transferred property is only "ostensibly lodged" in the fraudulent transferee, and the creditor is entitled to treat that property as belonging to the debtor-defendant). Thus, Helicon is entitled to ignore the transfer to NGF, and treat the transferred

---

[16] Section 278(1)(b) of the DCL does not relieve a creditor from the requirements in Article 62 of the CPLR. *Resinol v. Long Island Asbestos Contracting Co., Inc.*, 208 N.Y.S.2d 10, 11 (N.Y. Sup. Ct. 1960).

property (embodied in the debt owed by NGF's bank to NGF) as belonging to the Debtor. NGF's contrary arguments lack merit.

### 2. Property Held by an Alter Ego

The question of whether a debtor has an interest in property putatively owned by its alter ego is more straight-forward and easier to answer. Alter egos own a pool of common assets, and creditors may look to the assets of one to satisfy claims against the other. *See Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 138 (2d Cir. 1991); *Walkovszky v. Carlton*, 223 N.E.2d 6, 7-8 (N.Y. 1966) (Fuld, J.); *Bailon v. Guane Coach Corp.*, 912 N.Y.S.2d 188, 189 (N.Y. App. Div. 2010). Hence, the creditor of one alter ego can attach the assets held in the name of the other alter ego. *See, e.g.*, *Allstate Ins. Co. v. TMR Medibill Inc.*, CV-00-0002 (CPS), 2000 WL 34011895, at *16 (E.D.N.Y. July 13, 2000) (allowing attachment of non-party's assets because plaintiffs made sufficient showing regarding its reverse corporate veil piercing claim); *Worldwide Carriers, Ltd.*, 301 F. Supp. 64, 67-68 (S.D.N.Y. 1968) (allowing attachment of property held by third party on the basis of an alter ego theory because plaintiff made out at least a prima facie case).

### E. Was Helicon Required to Join NGF as a Party in the Underlying Action?

The conclusion that a plaintiff may attach fraudulently transferred property or property titled in the name of the defendant's alter ego does not end the inquiry. NGF is not a party to the action, and Helicon has not asserted a fraudulent transfer or alter ego claim against it. NGF contends that a creditor cannot attach or levy upon property in the custody of a third party under alter ego or fraudulent conveyance theories without actually bringing those claims against the third party in a plenary action. The relevant law does not, however, impose that requirement prior to levying on the non-party's property. To the contrary, the case law recognizes the

plaintiff's right to levy on property held by a non-party garnishee pursuant to an order of attachment. *E.g.*, *Allstate Ins.*, 2000 WL 34011895, at *16; *Gala Enters., Inc. v. Hewlett Packard Co.*, 970 F. Supp. 212, 217 (S.D.N.Y. 1997); *K/S Norman Agathe v. Sea Trade & Constr. Ltd.*, 767 F. Supp. 60, 61-62 (S.D.N.Y. 1991); *Am. Jerex Co.*, 340 F. Supp. at 532; *Great Lakes Carbon Corp.*, 387 N.Y.S.2d at 115; *Mandl*, 61 N.Y.S.2d at 367; *Exchange Nat. Bank of Tulsa v. Washington*, 30 N.Y.S.2d 43, 44-45 (N.Y. Sup. Ct. 1941). Furthermore, CPLR § 6214(d) recognizes that the plaintiff may attach the property or a debt in the possession of a non-party, and makes no exception for fraudulently transferred property or property held in the name of an alter ego.

NGF's contention nevertheless highlights the due process concerns implicated when a plaintiff levies on property or a debt in the possession of and ostensibly owned by a non-party. If the garnishee contests the attachment or asserts its own interest in the property or debt, Article 62 offers several alternatives that provide the non-party garnishee the opportunity to litigate its rights. Initially, if the order of attachment was issued *ex parte*, the plaintiff must move to confirm the order within five days on notice to the debtor, the sheriff and the garnishee. CPLR § 6211(b). The plaintiff bears the burden of proof, and the garnishee can compel the plaintiff to establish its right to the order of attachment. As noted, Helicon's emergency motion satisfied this requirement, and along with NGF's own motion, triggered the hearing that was interrupted by NGF's motion to vacate the Attachment Order on purely legal grounds.

The garnishee may also move, as NGF did here, to vacate the order of attachment. CPLR § 6223(a). In considering the motion, the court can "engage in any inquiry necessary to the determination of the movant's claim." 12 WEINSTEIN, KORN & MILLER ¶ 6223.10, at 62-245.

If the garnishee fails or refuses to deliver the property or pay the debt to the sheriff, the plaintiff may commence a special proceeding against the garnishee to compel the turn over, CPLR § 6214(d), and the garnishee may assert any defense or counterclaim that it could have asserted if it had been made a party to the lawsuit. 12 WEINSTEIN, KORN & MILLER ¶ 6214.13, at 62-150. In addition, any other non-party claiming an interest in the attached property or debt may commence a special proceeding in the nature of an interpleader to determine the adverse interests in the property or debt. CPLR § 6221.

Here, there is no due process concern. NGF filed a motion to vacate the Attachment Order, and has had ample opportunity to contest it. The trial halted after three days at NGF's choice to afford it an opportunity to brief its contention that the Attachment Order should be vacated as a matter of law. That motion has now been denied, and the hearing can continue.

Nevertheless, the conversion of the case and the appointment of the Trustee highlight the unusual nature of this matter. Helicon's right under state law to interfere with the Debtor's property interests through the Attachment Order ended with the commencement of the bankruptcy case. This is why Helicon moved for stay relief. In addition, several of the claims asserted in the *Verified Amended Complaint* belong to the estate. These include the fraudulent conveyance claims against Fancy Foods and the claims sounding in breach of fiduciary duty. They may also include aiding and abetting the Kims' breach of fiduciary duty if the "adverse interest" exception applies to preclude the application of *in pari delicto*. Those claims, as well as any claims alleging that NGF is a fraudulent transferee or alter ego of the Debtor, must be pressed by the Trustee as the estate representative. *Kalb, Voorhis & Co. v. American Fin. Corp.*, 8 F.3d 130 (2d. Cir. 1993); *St. Paul Fire and Marine Ins. Co. v. Pepsico, Inc.*, 884 F.2d 668, 705 (2d Cir. 1989); *Keene Corp.*, 164 B.R. at 850-52; *Corman v. LaFountain*, 835 N.Y.S.2d 201,

202-03 (N.Y. App. Div. 2007). This is why Helicon cross-moved for authority to prosecute those claims as the estate representative. At the time, the case was still pending under chapter 11 and the Kims were not going to sue themselves or their affiliates.

The conversion of the case and the appointment of the Trustee make the situation clearer. The Trustee will be substituted as the plaintiff, and if he intends to pursue this matter, he should file an amended complaint that eliminates Helicon's direct claims and asserts the estate's claims against the Kims, NGF and any other appropriate defendant. If the Trustee asserts a fraudulent transfer or alter ego claim against NGF, the hearing on the motion to vacate the Attachment Order will continue. If the Trustee does not amend the *Verified Amended Complaint* to assert a claim that will support the Attachment Order, the order will be vacated.

Accordingly, the Trustee is directed to file any amended pleading within thirty days of this order consistent with this opinion, unless the Court extends the deadline for cause shown. If the Trustee does not file and serve an amended pleading by the original or any extended deadline, NGF may settle a proposed order vacating the Attachment Order on notice to the Trustee, Helicon, any other parties to the adversary proceeding and any other garnishees of which it is aware.

So ordered.

Dated: New York, New York
       May 6, 2013

                          /s/ *Stuart M. Bernstein*
                          STUART M. BERNSTEIN
                          United States Bankruptcy Judge